<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| WANDA STEVENSON,<br><br>    Plaintiff,<br><br>v.<br><br>CITY OF NEWARK, *et al.*,<br><br>    Defendants. | No. 20cv18722 (EP) (AME)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff Wanda Stevenson ("Stevenson") brings this civil rights action under 42 U.S.C. § 1983, N.J. Stat. Ann. § 10:6-2 (the "New Jersey Civil Rights Act" or "NJCRA"), and N.J. Stat. Ann. § 10:5-1 (the "New Jersey Law Against Discrimination" or "LAD") for unlawful discrimination, retaliation, and a hostile work environment. Stevenson also brings claims under N.J. Stat. Ann. § 34:19-1 (the "New Jersey Conscientious Employee Protection Act" or "CEPA") for unlawful retaliation, and for Intentional Infliction of Emotional Distress ("IIED") under New Jersey common law. D.E. 1 ("Complaint" or "Compl.").

Before the Court is Plaintiff Wanda Stevenson's Motion for Summary Judgment under Federal Rule of Civil Procedure 56(a). D.E. 79 ("Stevenson's Motion" or "Stevenson Mot."). Defendant Khalif Thomas ("Thomas") filed an Opposition and Cross Motion for Summary Judgment. D.E. 80 ("Thomas's Motion" or "Thomas Mot."). Defendants Phillip Scott ("Scott"), Mayor of Newark Ras Baraka (the "Mayor"), and the City of Newark (the "City") (collectively the "City Defendants") also filed an Opposition and Cross Motion for Summary Judgment. D.E. 81 ("City's Motion" or "City Mot."). Defendant Thomas McDonald ("McDonald") filed his

Opposition and Cross Motion separately.  D.E. 82 ("McDonald's Motion" or "McDonald Mot.");

D.E. 83 ("McDonald's Opposition" or "McDonald Opp'n").

Stevenson opposed all Defendants' Cross Motions and replied to Newark's Opposition and

Thomas's Opposition, all in one filing.  D.E. 84 ("Stevenson's Opposition" or "Stevenson Opp'n").

Stevenson replied to McDonald's Opposition separately.  D.E. 89 ("Stevenson Reply").  Only the

City replied to Stevenson's Opposition.  D.E. 87 ("City Reply").

The Court decides the matter without oral argument.  *See* Fed. R. Civ. P. 78; L. Civ. R.

78.1(b).  For the reasons explained below, the Court will **DENY** Stevenson's Motion and will

**GRANT in part** and **DENY in part** Thomas's Motion, the City's Motion, and McDonald's

Motion.

## I.    BACKGROUND

### A.    Factual Background[1]

---

[1] The facts are drawn from Defendants' Statements of Material Facts, Stevenson's Counterstatement of Material Facts, Stevenson's Statement of Undisputed Facts, Defendants' Counterstatements of Undisputed Facts, Stevenson's Supplemental Statement of Undisputed Material Facts, and the exhibits referenced therein.  D.E. 80-3 ("Thomas SOMF"); D.E. 81-3 at 1-15 ("City SOMF"); D.E. 82-1 ("McDonald SOMF"); D.E. 79-2 ("WS SUMF"); D.E. 80-2 ("Thomas CS"); D.E. 81-3 at 16-20 ("City CS"); D.E. 84-7 ("WS City CS"); D.E. 84-8 ("Stevenson's McDonald Counterstatement"); D.E. 84-9 ("WS Thomas CS"); D.E. 84-1 ("WS SSUMF").  Because the Court denies in full Stevenson's Motion and denies in part and grants in part Defendants' Cross Motions, the Court presents the facts in the light most favorable to Stevenson.

A party may properly dispute a fact by citing to materials in the record.  Fed. R. Civ. P. 56(c)(1)(A).  In the District of New Jersey, parties opposing summary judgment should provide "a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion."  L. Civ. R. 56.1(a).  Because it "is not the Court's responsibility to comb the record," any material fact not disputed may be deemed undisputed for purposes of summary judgment.  *Id.*; *Baker v. The Hartford Life Ins. Co.*, No. 8-6382, 2010 WL 2179150, at *2 n.1 (D.N.J. May 28, 2010), *aff'd sub nom. Baker v. Hartford Life Ins. Co.*, 440 F. App'x 66 (3d Cir. 2011).  However, the purpose of the District of

1.    *Stevenson's Early Work Experience*

Stevenson is a Christian African American woman who has worked for the City of Newark ("Newark") since 1985 and has been Chief Sanitation Inspector since 1994.  WS SUMF ¶¶ 1-3. Stevenson also served as the union president of the American Federation of State, County, and Municipal Employees New Jersey Council Local 2299, and during her tenure as union president, the City appointed McDonald to supervise the Division of Inspections and Enforcement in or around 2011.  *Id.* ¶¶ 4, 9 19-20; D.E. 79-6 Exs. 1, 2 ("WS Dep.") 64:5-8.  Stevenson appealed McDonald's appointment because he had not appeared on the City's Civil Service List (the "2011 CSC Appeal") as an eligible candidate and Stevenson's union members opposed his appointment. WS SUMF ¶ 19; City SOMF ¶ 12; WS Dep. 305:14-18.  On the Civil Service eligibility list were four individuals who had completed the Civil Service Certification ("CSC") Exam, including Stevenson and two other women who were ranked first, second, and third.  WS SUMF ¶ 19. Despite Stevenson's appeal, McDonald remained in charge of the Division of Inspections and Enforcement.  *Id.* ¶ 20.

---

New Jersey's local rules are to facilitate the resolution of the motions before its courts, not to punish the parties for procedural defects.  *Boswell v. Eoon*, 452 F. App'x 107, 111 (3d Cir. 2011) (citing *Lorenzo v. Griiffith*, 12 F.3d 23, 28 (3d Cir. 1993).  Therefore, because the parties incorporate each other's facts across motions, the Court will not individually parse out factual disputes and if one party properly disputes a fact, that fact will be considered disputed for all.  *See, e.g.*, McDonald SOMF at 2 ("Thomas McDonald, hereby adopts the Statement of Facts as set forth in the Summary Judgment Cross-Motion of Co-Defendant City of Newark as if restated herein at length."); Stevenson Opp'n at 1 ("Ms. Stevenson has also respectfully submitted, and refers the Court to, her Statement of Undisputed Material Facts ("WS SUMF"), her Supplemental Statement of Undisputed Material facts ("WS S-SUMF"), and her Responses to each of Defendants' Counterstatements of Undisputed Material Facts.").  And to the extent the Court has noticed material facts in the voluminous record that contravene a party's representation, the Court may deem that fact disputed or unsupported by the record.  *See Digiacomo v. Prudential Ins. Co. of Am.*, 501 F. Supp. 2d 626, 629 n.4 (D.N.J. 2007) (cited approvingly by the Third Circuit in *Boswell*, 452 F. App'x 107, 112 (3d Cir. 2011)).

Following the 2011 CSC Appeal, McDonald refrained from speaking much to Stevenson. WS Dep. 240:8-11. Although McDonald was responsible for providing overtime opportunities, McDonald did not often share those opportunities with Stevenson. WS SUMF ¶ 22; WS Dep. 93:14-22. Instead, McDonald only shared those opportunities with Stevenson when men were unavailable. WS SUMF ¶¶ 22-23; WS Dep. 110:16-18; 96:16-24; *see also* D.E. 79-4 ("TW Cert")[2] ¶ 11; D.E. 79-3 ("WS Cert.") ¶ 49.

### 2. *2015 History*

Stevenson's and McDonald's relationship continued to deteriorate into 2015. On at least one occasion in 2015, McDonald reassigned Stevenson's team to other projects, leaving Stevenson to do her team's work by herself. WS SUMF ¶¶ 24, 47; WS Dep. 416:25-427:4. Stevenson and her team were also relocated various times over the years. For example, in 2015, Stevenson's unit moved from the sanitation building at 62 Frelinghuysen Avenue, to 44 Prospect Avenue, where McDonald and code enforcement employees were located. WS SUMF ¶¶ 24, 47; WS Dep. 416-27:25-4. After this move, Stevenson did not receive an office or a key to the building even though her subordinate, Ms. Vaughn, did. WS SUMF ¶¶ 24, 48-49; WS City CS ¶ 45; WS Dep. 417:7-19. During the move, Stevenson also found her belongings stacked atop a chair. WS SUMF ¶ 48. Stevenson does not know why this relocation took place but believes McDonald ordered it to spite her. WS City CS ¶ 43; WS McDonald CS ¶ 27.

### 3. *2016-2018 History*

McDonald continued to supervise Stevenson despite subsequent relocations into and out of the Department of Public Works. WS SUMF ¶ 12; WS Dep. 170-71:21-8. As Stevenson's

---

[2] Thomas White worked with Stevenson and submitted an affidavit in support of Stevenson's allegations. *See* TW Cert. ¶¶ 1-2.

supervisor, McDonald would at times comment on Stevenson's commitment to her religion by saying: "Wanda, every time I ask you to do something you going to talk about the bible" or "All you do is listen to Gospel, that don't mean nothing." WS SUMF ¶ 38; WS Dep. 62:5-7; 62:11-12. McDonald also directed Stevenson to dismiss sanitation violations that she or her team issued. WS SSUMF ¶¶ S6-S-8; WS McDonald CS ¶ 37.

In March 2016, Stevenson spoke with the Mayor. WS SUMF ¶ 50; WS Dep. 164:5-7. Stevenson and the Mayor discussed the politically motivated dismissal of sanitation violations, the frequent relocations from department to department, and Stevenson's ongoing issues with McDonald. WS SUMF ¶ 50; Stevenson Dep. 162:14-20, 164:5-12, WS City CS ¶¶ 53-54. Despite Stevenson's conversation with the Mayor, McDonald's interference with sanitation violations continued. WS SUMF ¶¶ 54-55, 69-73. McDonald would even go to municipal court to request the dismissal of sanitation violations. WS SUMF ¶ 53; WS Dep. 181:3-7. For example, on November 18, 2018, McDonald dismissed about 300 sanitation violations at once. WS SUMF ¶ 81; WS SSUMF ¶ S6; D.E. 79-20 Ex. 82. And in response to the "onslaught" of sanitation violations, the municipal court "banned" Stevenson from continuing to show up in defense of the violations. WS Dep. 198:10-199:6; *see also* WS McDonald CS ¶¶ 51, 72. Stevenson maintains that McDonald interfered with the sanitation violations to politically assist the Mayor. WS SUMF ¶ 80; *see* WS Dep. 200:22-204:8.

In addition to supervising Stevenson's sanitation inspector team, McDonald also supervised the code enforcement officers, a team responsible for issuing interior housing violations

for businesses.  WS Dep. 68:17-69:2.  Stevenson did not observe that McDonald dismissed violations issued by the code enforcement team.[3]  WS SUMF ¶ 79; WS Dep. 185:5-19.

In 2017, Thomas became the Director of the Department of Public Works ("DPW").  WS McDonald CS ¶ 66.  In 2018, Thomas provided employees with work vehicles, including Stevenson.  WS SUMF ¶ 85; WS Dep. 349:5-20.  However, Thomas later barred Stevenson from taking the work vehicle home even though he permitted men to do so.  WS SUMF ¶¶ 36, 85; WS McDonald CS ¶ 88; *see also* WS Dep. 349:1-350:15.  And while Thomas had Stevenson working overtime every time it snowed, McDonald continued to provide Stevenson with overtime opportunities only when male employees were unavailable.  WS SUMF ¶¶ 22-23; WS Thomas CS ¶ 28.

### 4.    *2019-2020 History*

McDonald continued to interfere with sanitation violations.  McDonald also manually closed out sanitation violations issued by Stevenson's team to decrease the number of open violations viewable by the Mayor.  WS SUMF ¶ 89; D.E. 79-17 Ex. 21.  Stevenson made Thomas aware of McDonald's interference in 2019.  D.E. 79-20 Ex. 81.

McDonald would also ignore Stevenson's texts and emails.  WS SUMF ¶ 88; D.E. 79-17 Ex. 22 at 61-62.  Some of the messages that McDonald ignored included Stevenson's pleas for McDonald to give Stevenson her personal belongings, which were in his office.  D.E. 79-17 Ex. 22 at 61-62. Some emails included Stevenson's report of work-related technological issues her team faced and needed assistance with.  *Id.* at 53-54.

---

[3] Stevenson testified that she did not know what McDonald generally did with respect to code enforcement violations and only knew that he did not interfere with violations that the code enforcement team issued to properties that her team also issued violations to.  WS Dep. At 184:3-12.

On August 26, 2019, MTV hosted its Video Music Awards ("VMAs") at the Prudential Center in Newark, New Jersey. D.E. 79-17 Ex. 21 at 1. Stevenson's department permitted non-essential workers to leave early, and McDonald emailed those supervisors who needed to stay. *Id.*; WS Dep. 271:7-273:13. McDonald did not email Stevenson and did not respond to her calls. D.E. 79-17 Ex. 21 at 1-2. After McDonald and her team left early, Thomas disciplined Stevenson and her team. *Id.*; WS Dep. 271:7-273:13. And despite Stevenson's explanations, Thomas docked Stevenson four hours of pay. D.E. 79-17 Ex. 21 at 1-2; WS Dep. 271:7-273:13. Stevenson later filed a grievance with the union and recovered the docked pay. WS Dep. 274:9-11.

Stevenson filed an affirmative action complaint ("AA Complaint") with the City on September 8, 2019, detailing her experiences with McDonald. WS SUMF ¶ 91. She provided Thomas and Scott (the Director of Engineering and McDonald's supervisor) with a copy of the AA Complaint. WS SUMF ¶ 92; D.E. 79-19 Ex. 56. In turn, Scott forwarded the AA Complaint to McDonald. D.E. 79-19 Ex. 56. After Stevenson filed the AA Complaint, Stevenson felt that McDonald had even fewer conversations with her, and she felt like his treatment of her was "just payback." WS Dep. 240:6-11. The City did not provide Stevenson with any notes or reports concerning any investigation performed in response to the AA Complaint. WS SSUMF ¶¶ S3-S5.

Following the AA Complaint, Stevenson was reassigned again to Thomas's Department. WS SUMF ¶ 95. However, Thomas's disposition towards Stevenson changed. WS SUMF ¶ 35. Thomas told Stevenson to get over her history with McDonald and that he did not "give a fuck about [her] mental state" when Stevenson shared that she was getting medical treatment for the anxiety McDonald caused her. WS SUMF ¶ 63; WS Dep. 289:11-291:3; D.E. 79-19 Ex. 65. Thomas also told Stevenson that according to his religion, women should be in cubicles and men should be in offices. WS SUMF ¶ 28. Thomas and McDonald excluded Stevenson from

management meetings on or around October 30, 2019, February 3, 2020, and July 13, 2020.  WS SUMF ¶ 62.  McDonald told Stevenson that women were better suited for clerical duties and would at times, make jokes about "plantation life" and the KKK.[4]  WS SUMF ¶¶ 26, 64-66.

Finally, in 2022 and 2023, the City passed over Stevenson for at least two promotions.  The City found Stevenson ineligible for an unidentified promotion and despite Stevenson's emails and efforts to have the City verify certain out-of-title experience to make her eligible, the City did not respond to her.  WS SUMF ¶ 97.  And despite being considered the only CSC-eligible person for the positions of Director of DPW and Assistant Director of Solid Waste Management, the City appointed a man as Director of DPW and has left the position of Assistant Director of Solid Waste Management open.  WS SUMF ¶ 98; WS Cert. ¶¶ 50-52.

B.    **Procedural History**

Stevenson filed her Complaint on December 10, 2020 and brought claims against Defendants McDonald, Thomas, Scott, the Mayor, the City, and various John Does.  D.E. 1 ("Compl.").  No defendant moved to dismiss any claims.  *See Dkt.*  Fact discovery followed and concluded on June 10, 2024.  D.E. 76.

Stevenson brings nine causes of action: Deprivation of Civil Rights under § 1983 (Count One); Retaliation under § 1983 (Count Two); Deprivation of Civil Rights under the NJCRA (Count Three); Retaliation under the NJCRA (Count Four); Hostile Work Environment under the LAD (Count Five); Sex/Gender Discrimination under the LAD (Count Six); Retaliation under the LAD (Count Seven); Retaliation under CEPA (Count Eight); and IIED under New Jersey common law (Count Nine).  Compl.

---

[4] Although Defendants do not dispute this fact, it is not clear from the record what period McDonald made these statements.  Nevertheless, the Court makes note of these statements in this section.

## II.    SUMMARY JUDGMENT STANDARD

Courts should grant summary judgment only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The substantive law governing the dispute will determine which facts are material, and only disputes over those facts 'that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" *DeHart v. Horn*, 390 F.3d 262, 267 (3d Cir. 2004).

The movant bears the initial burden of showing the basis for its motion and demonstrating that no dispute of material fact exists.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant must support its position by citing to the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]"  Fed. R. Civ. P. 56(c)(1)(A). Once the movant identifies evidence in support of its motion for summary judgment, the nonmovant must then counter with evidence that demonstrates there is a genuine issue of fact.  *Big Apple BMW, Inc. v BMW of North America, Inc.*, 974 F.2d 1358, 1362 (3d Cir. 1992), *cert denied*, 507 U.S. 912 (1993).  The Court must then view the evidence in the light most favorable to the non-moving party and determine whether a genuine dispute exists.  *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008).

### III.    ANALYSIS

#### A.    The Court Will Not Dismiss Stevenson's State Law Claims

The City Defendants argue that this Court should dismiss the pendant state law claims if it dismisses the pendant federal law claims.  City Mot. at 12.  Dismissal of pendant state law claims may be appropriate in other cases, but it is not appropriate here.  The Court grants Defendants' motions for summary judgment only in part, which permits the Court to *retain* jurisdiction.  And because the Court's analysis of the pendant federal and state claims relies on substantially the same factual questions, it would not serve judicial economy, convenience, or fairness for this Court to provide an incomplete analysis of the issues before it.  *See Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).  Accordingly, the Court has reviewed all of the parties' relevant arguments and addresses them below.

#### B.    Stevenson's IIED and State Retaliation Claims are Barred by CEPA (Counts Four, Seven, and Nine)

##### 1.    *Stevenson's intentional infliction of emotional distress claim is barred*

Stevenson argues that she should obtain summary judgment in her favor on her IIED claim because "[c]ertainly, the conduct inflicted upon the Plaintiff was extreme and outrageous beyond the bounds of decency."  Stevenson Mot. at 26.  Stevenson provides no further argument or analysis in her moving papers or in her opposition papers.  *Id.*  Stevenson does, for the first time, cite to specific facts in her Reply to the City Defendants.  Stevenson Reply at 14-15.  However, the Court need not address arguments raised for the first time in a reply brief.  *U.S. v. Boggi*, 74 F.3d 470 (3d Cir. 1996).  Nevertheless, Stevenson's IIED claim is barred anyway on the grounds described below.

Defendants argue that the New Jersey Tort Claims Act ("TCA") governs Stevenson's IIED claim. Thomas Mot. at 4; City Mot. at 27; McDonald Mot. at 1. The TCA governs tort suits filed against public entities and provides that for claims relating to injury to a person, "[t]he claimant shall be forever barred from recovering against a public entity or public employee if" that claimant "failed to file the [notice of] claim with the public entity within 90 days of accrual of the claim . . . ." N.J. Stat. Ann. § 59:8-8. Defendants Thomas and McDonald argue that Stevenson's IIED claim is barred because she did not file a notice of action. Thomas Mot. at 4; McDonald Mot. at 1. But Stevenson did file a notice of action. Stevenson Opp'n at 28 (citing D.E. 84-3 Ex. A). And Defendants do not argue that her notice is inadequate. Thus, the Court considers Stevenson's TCA notice of claim adequate.

But McDonald raises another argument. He correctly argues that by pursuing a CEPA retaliation claim, Stevenson is barred from also pursuing an IIED claim. McDonald Mot. at 2. A CEPA claim is "deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law" when the actions are based upon the same conduct. N.J. Stat. § 34:19-8; *see also Hrinuk v. Pub. Serv. Elec. & Gas Co.*, No. 14-988, 2018 WL 621292, at *2 (D.N.J. Jan. 30, 2018). Because Stevenson attributes her emotional distress to the retaliation she suffered, the Court finds that her CEPA retaliation claim is based upon the same conduct as her tort claim. Stevenson Mot. at 26; *see also* Stevenson Reply at 14 (listing "the following acts of discrimination, retaliation and outright hostility (among others)" as evidence of conduct supporting her IIED claims). Stevenson does not dispute that pursuing a CEPA claim waives her ability to pursue a common law tort claim based upon the same conduct.

Accordingly, this Court finds that institution of Stevenson's CEPA claim necessarily waives her IIED claim. The Court will **GRANT** Defendants' motions for summary judgment regarding Count Nine and will **DENY** Stevenson's motion for summary judgment with respect to the same.

2.    *Stevenson's NJCRA and LAD retaliation claims are also barred*

Defendants similarly argue that institution of Stevenson's CEPA claim amounts to a waiver of state law claims based upon the same conduct. McDonald Mot. at 2, 4; Thomas Mot. at 5; City Mot. at 13-14, 20-21. Stevenson does not dispute waiver with respect to her retaliation claims. *E.g.*, Stevenson Opp'n at 28-29. Nor could she. Stevenson's CEPA claim also argues retaliation and points to the same retaliatory conduct she identifies with respect to her NJCRA and LAD retaliation claims. *Id.* Because Stevenson's state law-based retaliation claims are "substantially related" to her CEPA claim, Stevenson is also barred from pursuing her NJCRA and LAD retaliation claims. *Young*, 141 N.J. at 29 (finding that the CEPA waiver provision barred other state claims requiring a finding of retaliatory conduct); *see also Prioli v. County of Ocean*, 2021 WL 4473159, at *20 (D.N.J. Sept. 30, 2021) ("[R]etaliation claims under the [NJ]LAD necessarily fall within the CEPA waiver provision").

Accordingly, this Court finds that institution of Stevenson's CEPA claim necessarily also waives her state law-based retaliation claims.[5] The Court will **GRANT** Defendants' motions for summary judgment regarding Counts Four and Seven and will **DENY** Stevenson's motion for summary judgment with respect to the same.

---

[5] Stevenson's CEPA claim does not waive her right to pursue claims that do not depend upon finding retaliatory conduct. *See Young v. Schering Corp.*, 141 N.J. 16, 20 (1995) (holding that "the waiver provision applies only to those causes of action that require a finding of retaliatory conduct").

### C.    Most of Stevenson's Claims are Barred by the Applicable Statute of Limitations

Before turning to the merits of Stevenson's arguments, this Court notes that many of the facts that Stevenson disputes or argues are beyond dispute occurred several years before she filed her Complaint. *See, e.g.*, WS SUMF ¶ 29 ("At different times [in 2015 and 2016] McDonald and Thomas excluded Plaintiff from management meetings while male supervisors were welcomed."); *see also, e.g.*, *id.* ¶¶ 67, 73. Stevenson brings claims based on facts that occurred nearly a decade before Stevenson filed her Complaint. *See, e.g.*, WS SUMF ¶ 19 (citing "the City's appointment of Defendant McDonald as Chief Code Enforcement Officer" in 2011 as an example of "preferential treatment given to men"); *see also, e.g.*, *id.* ¶¶ 22, 44-45. Because Defendants raise the applicable statute of limitations as a defense, the Court begins by determining what conduct occurred within the limitations period.

"Actions brought under 42 U.S.C. § 1983 are governed by the personal injury statute of limitations of the state in which the cause of action accrued. *Cito v. Bridgewater Twp. Police Dep't*, 892 F.2d 23, 25 (3d Cir. 1989). For § 1983 actions in New Jersey, that statute is N.J. Stat. Ann. § 2A:14-2, which provides that an action for injury to the person caused by wrongful act, neglect, or default, must be convened within two years of accrual of the cause of action." *O'Connor v. City of Newark*, 440 F.3d 125, 126 (3d Cir. 2006) (quoting *Brown v. Foley*, 810 F.2d 55, 56 (3d Cir. 1987)). Therefore, the applicable statute of limitations for Stevenson's § 1983 claims is two years.[6] As is the statute of limitations for the NJCRA because it too is subject to "[New Jersey] State's

---

[6] And the same applies to Stevenson's IIED claim too: "[E]very action at law for an injury caused by the wrongful act, neglect or default of any person within this State shall be commenced within two years next after the cause of any such action shall have accrued . . . ." N.J. Stat. Ann. § 2A:14-2. However, the Court does not address the facts related to Stevenson's IIED claim because it is barred by her CEPA claim. *See supra* section III.B.

general two-year personal injury statute of limitations." *Bullock v. Borough of Roselle*, No. 17-13208, 2018 WL 4179481, at *9 (D.N.J. Aug. 31, 2018) (collecting federal and state cases); N.J. Stat. Ann. § 2A:14-2(a).

For LAD actions, a two-year statute of limitations also applies. *Montells v. Haynes*, 133 N.J. 282, 287 (1993). However, CEPA actions are subject to a one-year statute of limitations. N.J. Stat. Ann. § 34:19-5.

There is an exception to the foregoing statute of limitations: the continuing violations doctrine. "'[W]hen a defendant's conduct is part of a continuing practice, an action is timely so long as the last act evidencing the continuing practice falls within the limitations period; in such an instance, the court will grant relief for the earlier related acts that would otherwise be time barred.'" *Patterson v. Strippoli*, 639 F. App'x 137, 141 (3d Cir. 2016) (quoting *Cowell v. Palmer Twp.*, 263 F.3d 286, 292 (3d Cir. 2001)). However, the continuing violations doctrine applies only to "address injuries that are the 'collective result of many *non-actionable*' slights." *Id.* (quoting *Major Tours, Inc. v. Colorel*, 799 F. Supp. 2d 376, 387 n.3 (D.N.J. 2011) (emphasis added)).

In contrast, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 165 (3d Cir. 2013) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). Discrete acts include "failure to promote, denial of transfer, . . . wrongful discipline, . . . [and] wrongful accusation." *O'Connor*, 440 F.3d at 127. In addition, "First Amendment retaliation claims are always individually actionable, even when relatively minor." *Id.* at 127-28.

The continuing violations doctrine can therefore potentially apply to Stevenson's hostile work environment claims brought under § 1983, NJCRA, and LAD, which are based upon aggregated acts, but it cannot apply to Stevenson's other claims for discrimination and retaliation,

which are necessarily discrete acts. *Sgro v. Bloomberg L.P.*, 331 F. App'x 932, 938 (3d Cir. 2009) (citing *Shepherd v. Hunterdon Dev. Ctr.*, 174 N.J. 1, 20-21 (2002)) (applying the continuing violations doctrine to hostile work environment claims brought under the LAD); *Davis v. New Jersey Dep't of Corr.*, No. 10-6439, 2011 WL 5526081, at *6 (D.N.J. Nov. 14, 2011) (collecting cases applying the continuing violations doctrine to NJCRA claims).

Nevertheless, the Court does not toll the limitations period for *any* of Stevenson claims because there are no continuing violations. Stevenson concedes that for the eighteen months that preceded July 2019, she had "a respected voice and a reasonable working environment." Stevenson Mot. at 2. Therefore, even if Stevenson was subject to a hostile work environment before those eighteen months, those acts were not part of a "continuing practice" and therefore, cannot be aggregated with recent events. *See, e.g.*, *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 716 (3d Cir. 1997) (finding that a break of seven months in the hostile work environment was "significant" and precluded a finding that the plaintiff suffered from a continuing hostile work environment); *Fala v. Perrier Group of Am.*, No. 99-3319, 2000 WL 688175, at *12-13 (E.D. Pa. May 25, 2000) (finding that a break of ten months was a "prolonged period" that precluded application of the continuations doctrine).

Therefore, for Stevenson's § 1983, NJCRA, and LAD claims, the Court will consider only Stevenson's claims that are based upon events that occurred during or after July 2019. All other preceding events are barred by the applicable statute of limitations. For Stevenson's CEPA retaliation claim, the Court will consider those parts of her claim that are based upon events that occurred within the one-year limitations period. If admissible, the barred incidents can, however, "provide 'background evidence in support of'" Stevenson's timely filed claims. *Patterson*, 639 F. App'x at 141 n.8 (quoting *Morgan*, 536 U.S. at 113).

### D.    Discrimination (Counts One, Three, and Six)

Stevenson seeks summary judgment on her deprivation of civil rights claims under § 1983, the NJCRA, and the LAD.  Stevenson Mot. at 3-8, 19.  Defendants oppose and cross-move for summary judgment on the same claims.  Thomas Mot. at 5-17; City Mot. at 5-8; Thomas Mot. at 9-20.  The Court begins by analyzing discrete acts and analyzes Stevenson's hostile work environment claims separately.

Because "[t]he Equal Protection Clause proscribes sex-based discrimination[,]" this Court "analyzes [Stevenson's] § 1983 equal protection claim using the *McDonnell Douglas* framework that applies in Title VII cases."  *Starnes v. Butler Cnty. Ct. of Common Pleas, 50th Jud. Dist.*, 971 F.3d 416, 426-28 (3d Cir. 2020) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).  New Jersey State courts also apply the *McDonnell Douglas* framework to NJCRA discrimination cases and to LAD cases too.  *State v. Chun*, 194 N.J. 54, 101 (2008) (holding that Article I, paragraph 1 of the New Jersey State Constitution provides the same "fundamental constitutional guarantee" of equal protection provided under federal law); *Szemple v. Correctional Med. Servs., Inc.*, 493 F. App'x 238, 241 (3d Cir. 2012) (interpreting the NJCRA and § 1983 analogously); *Zive v. Stanley Roberts, Inc.*, 182 N.J. 436, 447 (2005) (adopting the *McDonnell Douglas* framework for LAD claims).  Therefore, the Court will analyze Stevenson's discrimination claims brought under federal and state law together.

Under *McDonnell Douglas*, "[t]o make a prima facie case of discrimination, the plaintiff must show that: '(1) [she] is a member of a protected class; (2) [she] was qualified for the position [she] sought to attain or retain; (3) [she] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination.'" *Sorokina v. College of New Jersey*, No. 24-1365, 2025 WL 1289148, at *4 (3d Cir. May 5, 2025)

(quoting *Qin v. Vertex, Inc.*, 100 F.4th 458, 473 (3d Cir. 2024)).  An adverse employment action need not be "significant . . . [o]r serious, or substantial, or any similar adjective suggesting that the disadvantage . . . must exceed a heightened bar."  *McCrorey v. City of Philadelphia*, No. 23-2539, 2025 WL 1392164, at *3 (3d Cir. May 14, 2025) (quoting *Muldrow v. City of St. Louis*, 601 U.S. 346, 355 (2024)).  An adverse action need only amount to "'some harm' with respect to 'an identifiable term or condition of employment.'"  *Id.* (quoting *Muldrow*, 601 U.S. at 355); *see also Peifer v. Bd. of Probation & Parole*, 106 F.4th 270, 277 (3d Cir. 2024).

 If Stevenson makes her prima facie case, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the adverse employment action.  *McDonnell Douglas*, 411 U.S. at 802.  If the employer does so, the burden shifts back to Stevenson to show that the defendant's proffered reason is mere pretext.  *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).

In addition to showing a prima facie case, Stevenson can also show discrimination by pointing to direct evidence that "is so revealing of discriminatory animus that it is not necessary to rely on any presumption from the prima facie case to shift the burden of production."  *Starceski v. Westinghouse Elec. Corp.*, 54 F.3d 1089, 1096 (3d Cir. 1995) (cleaned up).  "In other words, the evidence must be such that it demonstrates that the 'decisionmakers placed substantial negative reliance on an illegitimate criterion in reaching their decision.'"  *Qin*, 100 F. 4th at 472 (quoting *Starceski*, 54 F.3d at 1096).

The Court analyzes step one of *McDonnell Douglas* first.  Here, the parties do not dispute that Stevenson is a member of a protected class.  McDonald Mot. at 13; Thomas Mot. at 13.  Nor do Defendants dispute that Stevenson satisfies the second prong.  City Mot. at 5-7; Thomas Mot. at 12-13; McDonald Mot. at 13.  The parties instead dispute whether Stevenson has identified

direct evidence of discrimination, the third and fourth prongs of Stevenson's prima face case, and whether Stevenson can show that Defendants' offered justifications are mere pretext.

Because the parties raise genuine issues of material fact with respect to these issues for McDonald and Thomas, and because the parties also raise genuine issues of material fact with respect to McDonald's and Thomas's justifications for the challenged actions, this Court will **DENY** McDonald's and Thomas's motions for summary judgment with respect to Counts One, Three, and Six as they pertain to Stevenson's discrimination claims.[7]  Because Stevenson fails to raise any genuine of material fact with respect to Scott or the Mayor, the Court will **GRANT** the City's Motion regarding Scott and the Mayor with respect to Counts One, Three, and Six as they pertain to Stevenson's discrimination claims.  Regarding the City, the Court addresses liability further below and reserves explanation for its judgment there.  *See infra* section III.G.1.

      1.    *Direct evidence of discriminatory animus*

Stevenson argues that she has shown direct evidence of discrimination by pointing to statements that McDonald and Thomas made evincing their discriminatory views of women. Stevenson Mot. at 6.  The parties do not dispute that McDonald stated that women were better suited for clerical work.[8]  The parties do dispute whether Thomas stated that women should work in cubicles and men should work in offices.[9]

---

[7] The Court separately analyzes Stevenson's hostile work environment allegations.  *See infra* section III.F.

[8] Thomas cites Exhibit F, Answer No. 9 to dispute McDonald's statement about clerical duties. Thomas CS ¶ 26. Exhibit F, Answer 9 states that McDonald was unaware of Stevenson's AA Complaint and was unaware of any related investigation.  D.E. 80-13. Because this dispute does not reference any relevant information in the record, the Court considers this fact admitted.  *See also* City CS ¶ 26 (citing nothing); McDonald Opp'n at 1 (relying on City CS).

[9] WS SUMF ¶ 28.  Thomas disputes this only by pointing to testimony that he obtained a bigger and less distracting office for Stevenson and her team.  KF SOMF ¶ 28 (citing D.E. 80-5 Ex. A at 31:13-16).

Similarly discriminatory statements were considered by the Third Circuit in *Fakete v. Aetna, Inc.*, 308 F.3d 335 (3d Cir. 2002). There, a defendant stated that he was "looking for younger single people" and that the plaintiff may not "be happy at Aetna in the future." *Fakete*, 308 F.3d at 339. The Third Circuit found that a reasonable jury could consider those statements as direct evidence of discriminatory animus motivating Aetna's decision to terminate plaintiff. The Court acknowledges that these facts are a closer call. But here too, the identified statements evince discriminatory animus and suggest a bias against Stevenson because of her gender. A reasonable jury, crediting these statements, could conclude that Stevenson's gender was more likely than not a substantial factor in McDonald's and Thomas's adverse treatment of Stevenson. But even if McDonald's and Thomas's statements did not rise to the level of direct evidence, the Court nevertheless finds that under *McDonnell Douglas*, genuine issues of material fact preclude summary judgment.

### 2. *Denial of overtime opportunities*

Turning to *McDonnell Douglas*, Defendants argue that Plaintiff's discrimination claims fail as a matter of law because she has failed to identify similarly situated nonmembers of the protected class that received better treatment. City Mot. at 5; Thomas Mot. at 12; McDonald Mot. at 13-14. A plaintiff may rely on comparative evidence to show that an employer's proffered reasons for a plaintiff's prima facie case is mere pretext. *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 882 (3d Cir. 2011). But while "comparative evidence is often highly probative of discrimination, it is not an essential element of a plaintiff's case." *Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 268-69 (3d Cir. 2010) (citing *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 353 (3d Cir. 1999)). Here, the Court assesses the circumstances to determines whether a reasonable jury could conclude

that Stevenson suffered an adverse employment action under circumstances that could give rise to an inference of discrimination.

Stevenson claims that McDonald denied her overtime and only provided her with overtime opportunities if male employees were unavailable. D.E. 79-6 Ex. A at 96:16-22; Stevenson Reply at 5-6.[10] McDonald disputes this and disavows responsibility for Stevenson's lack of overtime by pointing to Stevenson's testimony that unidentified supervisors "blackballed" her. McDonald Mot. at 14. Stevenson nevertheless maintains that McDonald was responsible for overtime and explains that his statement that women are better suited for clerical duties evinces his discriminatory intent. Stevenson Opp'n at 9; Stevenson SUMF ¶ 22; WS Dep. 93:14-22. Because the denial of overtime affects an employee's compensation, it necessarily qualifies as an adverse employment action.[11] *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761-62 (1998) (explaining that an adverse employment action can be shown by "direct economic harm").

Given McDonald's undisputed statement that women are better suited for clerical work, a reasonable jury could find that it is more likely than not that McDonald avoided providing her overtime for discriminatory reasons.

With respect to Scott, the Mayor, and the City, Stevenson identifies no facts showing that they had any knowledge or involvement with McDonald's denial of overtime opportunities. Stevenson also argues that Thomas denied her overtime, but her testimony conceded otherwise.

---

[10] Stevenson argues that she was denied overtime between 2012 and 2017, but those events are outside the limitations period.

[11] Because the denial of overtime affects an employee's compensation, it would have qualified as an adverse employment action even under the higher "serious and tangible" standard relied on in Third Circuit cases that predated the Supreme Court's decision in *Muldrow v. City of St. Louis*. 601 U.S. 346, 347 (2024); *see Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006); *Langley v. Merck & Co., Inc.*, 186 F. App'x 258, 260 (3d Cir. 2006). *Muldrow* lowered the standard for what constitutes an adverse employment action by more broadly including actions that cause "some harm." *Id.*

D.E. 80-5 Ex. A at 54:23-56:18. Thus, to the extent some denied overtime opportunities fall within the applicable limitations period, there is only a genuine issue of material fact with respect to McDonald. Accordingly, the Court will **GRANT** Thomas and the City Defendants summary judgment with respect to the denied overtime.

### 3. Promotions and raises

Stevenson argues that less qualified Muslim men received promotions and non-contractual raises, but she did not. Stevenson Mot. at 5 (citing WS SUMF ¶ 39). Although Defendants do not dispute this fact, Stevenson fails to identify any information regarding what promotions she refers to or when those promotions and raises occurred. WS SUMF ¶ 39. The Court is therefore unable to determine whether these promotions and non-contractual raises occurred under circumstances that could give rise to intentional discrimination. *See Bennet v. SE. Pennsylvania Transportation Auth.*, No. 24-1376, 2025 WL 1248815, at *3 (3d Cir. Apr. 30, 2025) (quoting *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288-90 (3d Cir. 2017) ("'Bare assertions, conclusory allegations or suspicions will not suffice' to show the existence of a genuine issue of material fact.").

Stevenson also argues that despite being the only eligible candidate on the CSC list for the positions Director of DPW and Assistant Director of Solid Waste Management, the City appointed a man to fill the position for Director of DPW and has apparently left the position of Assistant Director of Solid Waste Management open. Stevenson Mot. at 5 (citing WS SUMF ¶ 98). The City Defendants respond that the position of Director of DPW is a cabinet position appointed by the Mayor and is not on the CSC List. City Mot. at 7; *see also* D.E. 81-4 ¶¶ 3-6. The City Defendants further respond that Stevenson was not appointed as Director of DPW because she lacked the requisite experience of managing budgets and developing administration, and because she inaccurately portrayed her experience as Chief Sanitation Inspector. D.E. 80-3 ¶¶ 76-85.

However, Stevenson counters that she appealed that decision, was ultimately found eligible, and remains eligible for the still-open position of Assistant Director of Solid Waste Management.  WS SUMF ¶ 40.  Stevenson must, however, do more than show that her "employer's decision was wrong or mistaken."  *Sorokina*, 2025 WL 1289148, at *5 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)).  Stevenson must identify facts suggesting that these explanations were a *post hoc* fabrication or that discrimination motivated these promotion decisions.

She has not done so.  Stevenson points to the 2011 appointment of McDonald to supervise the Division of Inspections and Enforcement as evidence of discriminatory intent, but not only did that appointment take place more than a decade earlier, that appointment passed over eligible women and an eligible man.  WS SUMF ¶ 19.  And while Stevenson maintains that McDonald and Thomas have made comments evincing discriminatory animus, she does not suggest that McDonald or Thomas were involved with the decision to appoint someone else to Director of DPW or to leave vacant the position of Assistant Director of Solid Waste Management for two years.  Because Stevenson fails to raise a genuine issue of material fact with respect to the Defendants' failure to promote her or provide her with raises, the Court will **GRANT** all Defendants summary judgment with respect to Stevenson's lack of promotions and raises.

### 4.    *Access to city vehicles*

Stevenson claims that Thomas provided all supervisors—who apart from her, were all men—with full access to city vehicles, except for her.  Stevenson Opp'n at 23.  Thomas does not provide a pretext and instead maintains that he provided everyone with vehicles.[12]  An employer's failure to provide resources can be an actionable discriminatory act.  *See O'Connor*, 440 F.3d at

---

[12] WS SUMF ¶ 36; D.E. 79-3 ¶ 45; D.E. 79-4 ¶ 19; D.E. 79-6 Ex. A at 350:9-355:7; Thomas Mot. D.E. 80-6 Ex. A at 189:6-9, 195:17-196:18, 198:20-199:2.

126 n.1, 127 (understanding "discrete acts" to include "nearly all of": a denied promotion, failure to expunge a disciplinary record, transfer to a hostile supervisor, inadequate staff and resources, excessive work, change to a work schedule, disciplinary complaints, failure to credit overtime, failure to invite his family to an award ceremony, and failure to commend an employee's unit). Stevenson also argues that Thomas acted with discriminatory intent, as evidenced by his statement that according to his religion, women should be in cubicles and men should be in offices. Here, Stevenson has raised a genuine issue of material fact with respect to Thomas's adverse action that a jury could conclude was motivated by discriminatory animus.

However, Stevenson has not raised a genuine dispute of fact with respect to all Defendants. Although the City Defendants and McDonald do not dispute these facts,[13] Stevenson has not identified any evidence connecting them to the restricted use of city vehicles. Accordingly, the Court will **GRANT** the City Defendants and McDonald summary judgment with respect to the denied access to city vehicles and will **DENY** the Stevenson and Thomas summary judgment with respect to the same.

---

[13] The City cites nothing in its responsive statement of material facts to dispute this point. City CS ¶ 28. McDonald consequently also fails to dispute this fact. D.E. 83 at 1. Instead, in its briefing, the City argues that Stevenson testified that Thomas has never disparaged her race, religion, or gender. City Mot. at 4. But the City egregiously mischaracterizes Stevenson's testimony. *Id.* In response to a question about whether Thomas disparaged Stevenson's race, religion, or gender *while he was the Director of Public Works*, Stevenson testified "No. [pause]. Wait. I gotta take that back. I'm not sure because I don't know the time frames. I don't know. So I'm gonna – I'm gonna say I can't answer that right now." Yet, the City selectively only quotes the part of Stevenson's answer where she says "no," and characterizes Stevenson's response as "plainly" denying that Thomas ever disparaged her race, religion, or gender. Attorneys owe the Court a duty of candor. *See* MODEL RULES OF PRO. CONDUCT r. 3.3(a)(1). The Court does not appreciate misleading arguments and the mischaracterization of the record. The Court has itself reviewed the record and declines to treat Stevenson's certification as a sham affidavit. Where the Court has encountered relevant inconsistencies between Stevenson's arguments and the record, it acknowledges so in this Opinion.

### 5. *Exclusion from meetings*

Stevenson complains that McDonald "usurped [her] authority over her team by having a meeting with her team without her present" where McDonald instructed them to issue far fewer sanitation violations than they were previously expected to issue under Stevenson's leadership. WS SUMF ¶ 87; *see also* Stevenson Opp'n at 14. Stevenson again points to McDonald's statement that women were better suited for clerical duties. Stevenson Opp'n at 16; WS SUMF ¶ 26. Defendants do not dispute these facts and have not attempted to justify meeting with Stevenson's team without her. Adverse employment actions include conduct that adversely affects Stevenson's status as an employee to her team. *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300-01 (3d Cir. 1997). Providing directives to Stevenson's team in apparent contravention of her own directives— and without her present—could be deemed to cause her status as their supervisor "some harm."

Given McDonald's undisputed statement, a jury could find that excluding Stevenson from a meeting with her own team to discuss job responsibilities squarely within her purview was adverse conduct motivated by discriminatory animus. Accordingly, the Court will **DENY** Stevenson and McDonald summary judgment with respect to meeting exclusion.[14]

### 6. *Stevenson's other arguments*

Stevenson also complains that she was denied access to a database but male subordinates were provided with access. Stevenson Opp'n at 13-14; WS SUMF ¶ 33. But Stevenson does not identify who denied her access to the database, whether female subordinates were denied access, what the database was, why access to the database was an adverse action, or when the denied access took place. To the extent that Stevenson also complains that McDonald improperly closed

---

[14] Stevenson argues only that McDonald usurped her authority. To the extent Stevenson maintains this theory of discrimination against Thomas and the City Defendants, the Court will **GRANT** Thomas and the City Defendants summary judgment with respect to any meeting exclusion.

out sanitation violations,[15] Stevenson not only fails to explain why these acts were adverse, she actually agrees that the sanitation violations were inaccurate and that the edits were helpful for the Mayor's review. City CS ¶ 55 (citing Stevenson's deposition testimony). Stevenson therefore fails to raise a genuine issue of material fact with respect to her discrimination claims regarding denied access to a database and dismissed sanitation violations. To the extent Stevenson has raised other arguments, the Court has reviewed the briefing and finds any remaining issues (outside of her hostile work environment claims) insufficiently supported.

Accordingly, this Court will **DENY** Stevenson's motion for summary judgment regarding Counts One, Three, and Six and will **GRANT** the City Defendants' Motion for summary judgment for Scott and the Mayor with respect to the same. This Court will also **DENY** McDonald's Motion for summary judgment regarding Counts One, Three, and Six as they relate to the denial of overtime opportunities and exclusion from meetings but will **GRANT** McDonald's Motion for summary judgment regarding Counts One, Three, and Six as they relate to promotions, raises, access to city vehicles, and Stevenson's other arguments. This Court will also **DENY** Thomas's Motion for summary judgment regarding Counts One, Three, and Six as they relate to access to city vehicles but will **GRANT** Thomas's Motion for summary judgment regarding Counts One, Three, and Six as they relate to promotions, raises, the denial of overtime opportunities, exclusion from meetings, and Stevenson's other arguments. The Court reserves its discussion of liability against the City below. *See infra* section III.F.

---

[15] Stevenson also complains that McDonald improperly dismissed sanitation violations issued by her or her team, thereby causing the municipal court to discipline her, but these events occurred outside the limitations period. Stevenson Opp'n at 14; WS SUMF ¶¶ 53-54 (citing emails from 2016 and 2018).

### E.    Retaliation (Counts Two and Eight)

Because the Equal Protection Clause also proscribes workplace retaliation, this Court applies *McDonnell Douglas* to Stevenson's retaliation claims. "To make a prima facie case of retaliation under *McDonnell Douglas*, the plaintiff must show '(1) that she engaged in protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Sorokina*, 2025 WL 1289148, at *4 (quoting *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022)). Here too, if Stevenson provides a prima facie case, the burden shifts to Defendants "to articulate some legitimate, nondiscriminatory reason" for the challenged action. *McDonell Douglas*, 411 U.S. at 802.

The proofs required for Stevenson's CEPA retaliation claim overlap with her § 1983 retaliation claim. To prevail on her CEPA claim, Stevenson must show (1) she reasonably believed that her employer's conduct violated the law; (2) she performed a "whistle-blowing" activity as defined in N.J. Stat. Ann. § 34:19-3(c); (3) she suffered an adverse employment action; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. *Lippman v. Ethicon, Inc.*, 222 N.J. 362, 380 (2015). Because both Stevenson's § 1983 retaliation claim and CEPA retaliation claim both require proving a causal nexus between the protected activity and the adverse action, the Court begins (and ends) there.

Stevenson complains that she was retaliated against after filing her AA Complaint, where she raised concerns about discrimination and the improper dismissal and deletion of sanitation violations. However, the improperly handled sanitation violations were not strictly Stevenson's. The deleted violations were issued by one of Stevenson's inspectors and interfered with prior to Stevenson's AA Complaint. *See, e.g.*, WS SUMF ¶ 55. She argues that following her AA

Complaint in September 2019, McDonald and Thomas excluded Stevenson from three meetings on or around October 30, 2019, February 3, 2020, and July 13, 2020. Stevenson Opp'n at 19; WS SUMF ¶ 62. But Stevenson has consistently maintained that she was regularly excluded from meetings, classes, and training sessions, both before and after the AA Complaint. *See, e.g.*, WS SUMF ¶¶ 32; 62, 87. Stevenson therefore fails to identify facts suggestive of a causal nexus between her exclusion from the meetings and her AA Complaint.

Stevenson also points to Thomas's wrongful discipline of her, based on McDonald's conduct. When the VMAs were held at the Prudential Center, McDonald emailed all supervisors whose personnel needed to continue working. WS Dep. 271:7-273:13. But he did not email Stevenson. *Id.* Stevenson reached out to McDonald, but he did not answer her. *Id.* As a result, Stevenson and her team departed early, along with other non-essential personnel. WS Dep. 271:7-273:13. As a result, Thomas docked Stevenson and her team four hours pay, despite Stevenson's explanations. *Id.* However, while "First Amendment retaliation claims are always individually actionable, even when relatively minor," they must still satisfy the causal nexus requirement. *Mandel*, 706 F.3d at 165 (quoting *Morgan*, 536 U.S. at 113). Here, the VMAs occurred on August 26, 2019 at the Prudential Center—*before* Stevenson filed her AA Complaint. Thus, this act could not have been retaliatory.[16]

Stevenson raises other retaliation arguments, but those do not raise a genuine issue of material fact either. For example, Stevenson argues that Defendants retaliated against her by depriving her of promotions and raises. Stevenson Opp'n at 20. But Stevenson has continuously

---

[16] The Court notes a reoccurring problem with Stevenson's arguments. They often obfuscate or are unmoored from any dates, inhibiting the Court's ability to determine whether they are within the limitations period or whether they occurred close enough in time to Stevenson's protected conduct such that a reasonable jury could find that they were retaliatory.

maintained that she has consistently been deprived of promotions and raises, both before and after she engaged in protected conduct. Stevenson also complains that Thomas stopped allowing her to take a city vehicle home, and that McDonald began ignoring her calls and messages. *Id.* This argument suffers from the same infirmity: they also began before Stevenson filed her AA Complaint. D.E. 79-17 Ex. 18. Stevenson also complains that her transfer back to McDonald in 2020 was retaliatory, but Stevenson was transferred *away* from McDonald about a month after naming him in her AA Complaint. Her transfer back to his division in June 2020—almost a year later—does not permit the inference that an unidentified person or entity transferred her back for retaliatory reasons, especially given the history of administrative transfers of Stevenson's team between divisions and departments. *See LeBoon v. Lancaster Jewish Cmt. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) (holding that "a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation and defeat summary judgment"). Finally, Stevenson complains that the City retaliated against her by refusing to verify out-of-title experience and promoting someone else to Director of DPW. Stevenson Opp'n at 20. However, these actions took place over a year after Stevenson filed her AA Complaint and there are no facts suggesting a causal nexus exists between the AA Complaint and the lack of promotion.

The Court will therefore **GRANT** Defendants' summary judgment motions with respect to Counts Two and Eight.

### F.    Hostile Work Environment (Counts One, Three, and Five)

Stevenson complains that she suffered a hostile work environment. Stevenson Mot. at 4. Defendants oppose. Thomas Mot. at 5-6; City Mot. at 15-17; McDonald Mot. at 3. To prevail on her § 1983 and NJCRA hostile work environment claims, Stevenson must establish that (1) she suffered intentional discrimination because of her race, gender, or religion; (2) the discrimination

was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person of the same protected class in her position; and (5) a basis for vicarious liability. *Mandel*, 706 F.3d at 167. The Court must concentrate on the overall scenario and consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993); *Qin* 00 F.4th at 471.

Under the LAD, Stevenson can show a hostile work environment by proving that "the complained-of conduct (1) would not have occurred but for the employee's [protected status]; and it was (2) severe of pervasive enough to make a (3) reasonable [person] believe that (4) the conditions of employment are altered, and the working environment is hostile or abusive." *Cutler v. Dorn*, 196 N.J. 419, 430 (2008) (cleaned up). Stevenson must also show *respondeat superior* liability. *Mandel*, 706 F.3d at 206, 213. The standards for hostile work environment under § 1983 (and by extension, the NJCRA) and the LAD are "strikingly similar" and can be analyzed simultaneously. *Grazioli v. Genuine Parts Co.*, 409 F. Supp. 2d 569, 576 n.10 (D.N.J. 2005).

Stevenson complains that she suffered a hostile work environment based largely upon the same conduct she raises for her other claims: (1) she was disfavored for promotions and raises; (2) McDonald bullied her; (3) McDonald and Thomas condoned obscene and derogatory remarks in her presence; (4) McDonald mocked Stevenson's religion; (5) McDonald used vulgar language; (6) McDonald forced Stevenson to repeatedly relocate her office; (7) McDonald and Thomas excluded Stevenson from meetings and trainings; (8) McDonald and Thomas interfered with her authority over her team; (9) McDonald sometimes reassigned Stevenson's inspectors to other projects; (10) McDonald would ignore Stevenson and refused to speak with her; (11) Thomas told

Stevenson that men should have offices and women should have cubicles; and (12) Thomas denied Stevenson's continued access to a city vehicle. Stevenson Mot. at 9-10. While most of the conduct that Stevenson complains of is either innocuous or barred by the statute of limitations, the Court finds that some of her arguments raise a viable dispute.

*First*, exclusion from meetings can support a hostile work environment claim. *Adams v. City of Newark*, 747 F. Supp. 3d 721, 734 (D.N.J. 2024). Here, Stevenson identifies three management meetings from which she was excluded and one meeting between her team and McDonald, from which she was also excluded. The nature of these meetings and her exclusion from them can contribute to a hostile work environment because as explained above, *supra* section IV.D.5, they may adversely impact her perceived status as an employee. *Second*, "a single racial epithet, uttered by a supervisor, might suffice to prove the existence of a hostile work environment [and make] the employer liable." *Cicchetti v. Morris County Sheriff's Office*, 194 N.J. 563, 592-93 (2008). The offensive remark need not be racially motivated but must clearly demonstrate discriminatory animus. *See, e.g.*, *Cutler v. Dorn*, 196 N.J. 419, 438 (2008) (agreeing that religious taunts can contribute to a hostile work environment); *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) (agreeing that disparaging gender-related remarks can contribute to a hostile work environment). Here, the parties dispute whether Thomas told Stevenson that according to his religion, men should be in offices and women should be in cubicles. The parties do not dispute that McDonald told Stevenson that women were better suited for clerical work. Those statements, uttered to Stevenson by her supervisors, can likewise contribute to a hostile work environment. *Third*, McDonald's apparent consistent habit of ignoring and disregarding Stevenson also contributes to a hostile work environment. While "petty slights" typically cannot make up the basis for a hostile work environment claim, McDonald's seeming unwillingness to

speak to Stevenson goes beyond a "simple lack of good manners." *See Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006).  McDonald's failure to communicate with Stevenson resulted in Thomas having docked her for four hours of pay, for which she had to file a grievance with the union to recover.  Stevenson has identified facts showing that McDonald's practice of ignoring her, while not necessarily severe, was pervasive and the action would have been detrimental to a reasonable person in like circumstances.[17]  Finally, Stevenson's allegations that Thomas denied her overtime work, denied her access to city vehicles, and cursed at her in response to concerns she raised about her mental state may also contribute to a hostile work environment.

"The basis of an employer's liability for a hostile work environment claim depends on whether the harasser is the victim's supervisor or coworker." *Mandel*, 706 F.3d at 169.  Employers are vicariously liable when a supervisor uses his authority to create an actionable hostile work environment for another employee. *Hitchens v. Montgomery Cty.*, 278 F. App'x 233, 235-36 (3d Cir. 2008).  Here, there is no doubt that McDonald and Thomas wielded supervisory authority over Stevenson.  The Court considers the whole overall scenario, including Stevenson's exclusion from management meetings and meetings with her own staff, deprivation of her city vehicle, denial of overtime opportunities, McDonald's consistent refusal to communicate or interact with Stevenson to a degree beyond a mere cold shoulder, inappropriate docking of hours, and McDonald's and Thomas's discriminatory comments.  Because a jury could find that a reasonable person would have found Stevenson's working conditions hostile and that discriminatory animus motivated the hostility, these issues may proceed to trial.  The Court will therefore **DENY** Stevenson's Motion, McDonald's Motion, and Thomas's Motion with respect to Counts One, Three, and Five.

---

[17] Stevenson's exhibits include screenshots of work-related questions to McDonald that for months, went unanswered. D.E. 79-17.  One message included Stevenson's request to obtain her own property that had been relocated to McDonald's office. *Id.*

### G.    Liability

#### 1.    *The City and Monell liability (Counts One and Three)*

Stevenson seeks summary judgment on her *Monell* claim against the City.  Stevenson Mot. 26.  The City Defendants also seek summary judgment on Stevenson's *Monell* claim.  City Mot. at 10-12.  Because the Court finds that there is no genuine issue of material fact with respect to Stevenson's *Monell* claim and because the record cannot support a *Monell* claim, the Court will **GRANT** summary judgment to Defendants on Stevenson's *Monell* claim.

Although municipalities like the City can be sued pursuant to § 1983 and the NJCRA, the law has long been understood to permit liability against municipalities only under three circumstances: The first occurs when "'action pursuant to official municipal policy' caused [the] injury."  *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell v. New York City Dept. of Social Servs. of the City of New York*, 436 U.S. 658, 691 (1978)).  The second occurs when "no rule has been announced but federal law has been violated by an act of the policymaker itself."  *Natale v. City of Camden County Corr. Facility*, 318 F.3d 575, 584 (3d Cir. 2003) (quoting *Bd. of County Comm'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 417 (1997)).  The third occurs when "the need to take some action … is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need."  *Id.* (quoting *Bryan County*, 520 U.S. at 417-18).

An individual is a policymaker for purposes of *Monell* when the individual "possesses final authority to establish municipal policy with respect to the action ordered."  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).  "If a municipal employee's decision is subject to review, even discretionary review, it is not final and that employee is therefore not a policymaker for

purposes of imposing municipal liability under § 1983." *Brennan v. Norton*, 350 F.3d 399, 428 (3d Cir. 2003). Notably, under *Monell*, a municipality cannot be liable for constitutional deprivations under a *respondeat superior* theory. *Monell*, 436 U.S. at 690.

Here, Stevenson appears to make two primary arguments. Neither are fully articulated, and neither are persuasive. *First*, Stevenson seems to argue that the City is subject to *Monell* liability because on two occasions it appointed ineligible men to positions and passed over eligible females. Stevenson Mot. at 27. As discussed before, this Court will not consider McDonald's 2011 promotion[18] because it is time-barred. WS SUMF ¶ 19; *see supra* section III.C. The Court will therefore consider only the promotion of Kareem Adeem to the Director of the Division of Public Works in 2024. WS SUMF ¶ 41; D.E. 79-18 at 55 (Ex. 41). Next, Stevenson argues that "the City established a custom, policy and practice of condoning discrimination, harassment and retaliating against employees who expose misconduct." Stevenson Mot. at 27. Stevenson argues that this policy of "go along to get along" was "well-known" and meant that "those who stood up for what was right would be punished." *Id.* The City Defendants argue that Stevenson's theories fail because she neither identifies an unconstitutional policy, custom, or practice, nor does she identify a policymaker who acted unconstitutionally. City Mot. at 11-12. This Court agrees with the City Defendants.

The Court addresses Stevenson's theory of liability with respect to Kareem Adeem's promotion over Stevenson first. As discussed above, a failure to promote is a discrete actionable event. *O'Connor*, 440 F.3d at 127 (explaining that a "failure to promote" is a discrete act). But Stevenson fails to identify any municipal policy, custom, or practice related to his promotion that

---

[18] WS SUMF ¶ 19. Promotions are discrete events.

she believes amounted to a constitutional violation.[19]  Nor does Stevenson identify in her arguments who was responsible for Adeem's promotion or whether that individual was a policymaker.  Finally, Stevenson does not identify any obvious need with respect to promotions that evinces deliberate indifference to her constitutional rights.  This argument therefore fails.

The Court next addresses Stevenson's "go along to get along" theory of *Monell* liability. Apart from Stevenson's conclusory allegation that this policy existed and was "well-known," there are no facts indicating that this "go along to get along" policy was actually in practice, or that following this policy caused the complained-of constitutional violations.  Accordingly, because Stevenson fails to identify facts, disputed or not, to support her promotion-based theory of *Monell* liability, the Court will **GRANT** the City's motion for summary judgment with respect to Counts One and Three.

2.    *The City may be vicariously liable under the LAD*

An employer may be liable for the acts of its supervisor in violation of the LAD if the supervisor acts within the scope of his or her authority.  *Lehmann v. Toys R Us, Inc.*, 132 N.J. 587 (1993); *see also Cicchetti*, 194 N.J. at 595 (finding that supervisors' acts "are imputed to plaintiff's employer, the Sheriff's Office, as a result of their status as supervisors").  The City Defendants attempt to avoid liability by raising the *Ellerth/Faragher* defense:  an affirmative defense to LAD vicarious liability recognized by New Jersey State law.  *Aguas v. State*, 220 N.J. 494, 499 (2015); *see also Dunkley v. S. Coraluzzo Petroleum Transps.*, 441 N.J. Super. 322, 330 (2015) (holding that "the Court's discussion [in *Aguas*], anchored in *Restatement* § 219(2)(b), applies generally to

---

[19] Instead, it seems that it was Newark's policy to hire and promote eligible candidates on the Civil Service Commission ("CSC") list.  Stevenson Mot. at 7 ("Those positions were given to males who were not CSC eligible, in violation of New Jersey Civil Service rules.").  But *breaking* with policy does not qualify as an "action *pursuant* to official municipal policy."  *See Monell*, 436 U.S. at 691 (emphasis added).

employer liability for the torts of employees, for any type of discrimination.").  However, to avoid liability under *Ellerth/Faragher*, the City must demonstrate "the existence of effective preventive mechanisms."  *Dunkley*, 441 N.J. Super. at 331 (enumerating factors for courts to consider).

Here, Stevenson disputes that the anti-discrimination policies that the City has in place are effective to prevent discrimination.  Stevenson Opp'n. at 27.  In particular, Stevenson argues that, in apparent contravention of the City's anti-discrimination policy, the City failed to conduct any investigation into her allegations, failed to compile any report, and the Affirmative Action review board failed to convene in response to her AA Complaint.  *Id.* at 27-28; *see also* Stevenson SSUMF ¶¶ S3-S5.  Given the dispute that Stevenson has raised regarding the efficacy of the City's policies, a reasonable jury could conclude that the City is not entitled to prevail on an *Ellerth/Faragher* defense and consequently, may not avoid liability for discriminatory acts committed by McDonald or Thomas.  The Court will therefore **DENY** Stevenson's Motion and the City Defendant's Motion with respect to the City's liability for any LAD violations committed by McDonald and Thomas.

### 3.    *McDonald and Thomas may be personally liable under the LAD*

A supervisor may be personally liable under the LAD as an aider or abettor if "(1) the party whom the defendant aids [] performs a wrongful act that causes injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation."  *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004) (internal quotations omitted).  This can include the supervisor's own conduct.  *Cicchetti*, 194 N.J. at 594, n.4 (collecting cases).  And while negligent supervision is insufficient, a supervisor has a duty to act against harassing acts and when "a supervisor flouts this duty, he subjects himself and his employer to liability."  *Id.*; *Hurley v. Atlantic City Police Dept.*, 174 F.3d 95, 126 (3d Cir. 1999).

Here, a reasonable jury could conclude that McDonald and Thomas are personally liable under the LAD.  As discussed above, the parties have raised a genuine issue of material fact with respect to whether McDonald and Thomas engaged in discrimination and/or created a hostile work environment in violation of the LAD.  *See supra* sections III.D. and III.E.  A reasonable jury could find, based on the discriminatory comments they made, that McDonald and Thomas were aware of their own discriminatory conduct and used their supervisory authority in furtherance of it.  *See, e.g.*, *Ivan v. County of Middlesex*, 621 F. Supp. 2d 546, 554 (D.N.J. 2009).  Although Stevenson states that she told Thomas that McDonald's conduct caused her anxiety—which Thomas told her to get over—and contends that she explained why she and her team left early after the VMAs, she does not present evidence that Thomas knew that McDonald's conduct was discriminatory.  As a result, Stevenson cannot show that Thomas was aware of McDonald's potentially illegal activity.  Therefore, Stevenson has raised a genuine dispute that would permit a reasonable jury to find that McDonald and Thomas may be liable for their own acts.  She has not, however, raised a genuine dispute that Thomas may be liable for McDonald's acts.  The Court will therefore **GRANT** Thomas's Motion with respect to any LAD violations committed by McDonald but will **DENY** Stevenson's Motion, McDonald's Motion, and Thomas's Motion with respect to whether McDonald and Thomas may be personally liable for their own LAD violations.

### 4.    *Availability of punitive damages*

Defendants move for summary judgment with respect to Stevenson's request for punitive damages.  Thomas Mot. at 20; McDonald Mot. at 23; City Mot. at 27.  Punitive damages are available when a plaintiff shows that a defendant engaged in discriminatory practices with malice or with reckless indifference.  *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 79 n.2 (3d Cir. 2009).  Because there are disputed issues of fact with respect to McDonald's and Thomas's intent,

the Court here too will **DENY** Defendants' motions for summary judgment. This issue of damages will be determined at trial.

IV.      **CONCLUSION**

For the foregoing, the Court will **DENY** Stevenson's Motion and will **GRANT in part** and **DENY in part** Thomas's Motion, the City's Motion, and McDonald's Motion. An appropriate order accompanies this Opinion.

The Court will **GRANT** all Defendants summary judgment as to Counts Two, Four, Seven, Eight, and Nine. The Court will additionally **GRANT** the City summary judgment as to Counts One and Three and will additionally **GRANT** Scott and the Mayor summary judgment as to all counts. The Court will **DENY** McDonald and Thomas summary judgment as to Counts One, Three, Five, and Six, and will **DENY** the City summary judgment as to Counts Five and Six.

June 30, 2025

Evelyn Padin, U.S.D.J.

37