<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

WANDA STEVENSON,

    Plaintiff,

    v.

CITY OF NEWARK, *et al.*,

    Defendants.

No. 20cv18722 (EP) (AME)

**OPINION**

**PADIN, District Judge.**

Plaintiff Wanda Stevenson brings this civil rights action under 42 U.S.C. § 1983, N.J. Stat. Ann. § 10:6-2 (the "New Jersey Civil Rights Act" or "NJCRA"), and N.J. Stat. Ann. § 10:5-1 (the "New Jersey Law Against Discrimination" or "NJLAD") for unlawful discrimination, retaliation, and a hostile work environment. D.E. 1 ("Complaint" or "Compl."). Stevenson also brings claims under N.J. Stat. Ann. § 34:19-1 (the "New Jersey Conscientious Employee Protection Act" or "CEPA") for unlawful retaliation, and for intentional infliction of emotional distress ("IIED") under New Jersey common law. *Id.* Stevenson brings these claims against Phillip Scott, the Mayor of Newark Ras Baraka (the "Mayor"), and the City of Newark (the "City") (collectively, the "City Defendants"), Khalif Thomas, and Thomas McDonald (collectively with the City Defendants, "Defendants"). *See* Compl.

After fact discovery was completed, all parties moved for summary judgment. D.E. 79 ("Stevenson Summary Judgment Motion"); D.E. 80 ("Thomas Motion"); D.E. 81 ("City Motion"); D.E. 82 ("McDonald Motion"). On June 30, 2025, the Court issued an opinion and order which denied Stevenson's Summary Judgment Motion and granted in part and denied in part Defendants'

respective motions for summary judgment. D.Es. 90 ("Prior Opinion" or "Prior Op.") & 91 ("Prior Order").

Presently before the Court is Stevenson's Motion for Reconsideration of the Prior Opinion. D.E. 95 ("Motion" or "Mot."). All Defendants oppose. D.Es. 99 ("McDonald Opposition" or "McDonald Opp'n"); 101 ("City Opposition" or "City Opp'n"); & 103 ("Thomas Opposition" or "Thomas Opp'n"). Stevenson replies to all Defendants in a single submission. D.E. 104 ("Reply").[1] Having considered the parties' arguments, and having determined that oral argument is not necessary,[2] the Court will **DENY** Stevenson's Motion.

I.    **BACKGROUND**

  A.    **Factual Background[3]**

Stevenson is a Christian African American woman who has worked for the City since 1985 and has been Chief Sanitation Inspector since 1994. In or around 2011, the City appointed McDonald to supervise the Division of Inspections and Enforcement. Stevenson appealed McDonald's appointment to that position because he had not been listed as an eligible candidate on the City's Civil Service List, while Stevenson was on the list.[4] Despite Stevenson's appeal, McDonald remained in charge of the Division of Inspections and Enforcement, which Stevenson's

---

[1] Stevenson has not sought leave to file a reply brief in support of her Motion, as she was required to do. *See* L. Civ. R. 7.1(d)(3). Nevertheless, the Court will consider her Reply.

[2] *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

[3] The Court assumes the parties' familiarity with the facts of this action and summarizes its Prior Opinion as relevant to Plaintiff's Motion. Unless stated otherwise, all citations in this section are to the Court's Prior Opinion.

[4] The City's Civil Service List is the list used by the City to determine which individuals are eligible for certain jobs. On the list were four individuals who had completed the Civil Service Certification Exam, including Stevenson and two other women who were ranked first, second, and third. A man was ranked fourth.

Sanitation Inspection Unit was a part of (*i.e.*, McDonald was above Stevenson in the chain of command).

As detailed at length in the Prior Opinion, Stevenson and McDonald had a complicated working relationship from the get-go. For example, McDonald, who was responsible for providing overtime opportunities to those in his division (including Stevenson), did not often share those opportunities with Stevenson. According to Stevenson, McDonald only shared those opportunities with her when men were unavailable.

As time went on, Stevenson's and McDonald's relationship continued to deteriorate. On at least one occasion in 2015, for instance, McDonald reassigned Stevenson's team to other projects, leaving Stevenson to do her team's work by herself. In addition, McDonald directed Stevenson to dismiss several sanitation violations that she or her team issued, a move she believes was politically motivated.

On top of these actions, McDonald made comments to Stevenson regarding her religious beliefs. On one occasion, McDonald said: "Wanda, every time I ask you to do something you going to talk about the bible," and on another, he said "All you do is listen to Gospel, that don't mean nothing."

In March 2016, Stevenson spoke with the Mayor regarding a variety of issues, including the politically motivated dismissals of sanitation violations and her ongoing problems with McDonald. Despite Stevenson's conversation with the Mayor, McDonald's interference with sanitation violations continued.

In 2017, Thomas became the Director of the Department of Public Works ("DPW") and Stevenson began reporting to him instead of McDonald. In 2018, he provided employees, including Stevenson, with work vehicles. For the eighteen months that preceded July 2019,

Stevenson had a respected voice and a reasonable working environment working under Thomas. But in July 2019, things changed when she was moved back under the supervision of McDonald. During this time, McDonald would ignore Stevenson's texts and emails, some of which were Stevenson's requests for McDonald to give Stevenson her personal belongings which were in his office. Stevenson and her team were also stripped of their work vehicles around this time, although others were not.

Stevenson filed an affirmative action complaint ("AA Complaint") with the City on September 8, 2019, in which she detailed her experiences with McDonald. She provided Thomas and Scott (the Director of the City's Department of Engineering and McDonald's supervisor) with a copy of the AA Complaint. Scott then forwarded the AA Complaint to McDonald.

After Stevenson filed the AA Complaint, she felt that McDonald had even fewer conversations with her and that his continued poor treatment of her was "just payback" for filing the AA Complaint. The City did not provide Stevenson with any notes or reports concerning any investigation performed in response to the AA Complaint.

Around a month after she filed the AA Complaint, Stevenson was reassigned to the DPW under Thomas's supervision. At that time, Thomas attitude toward Stevenson was different from before. He told Stevenson to get over her history with McDonald and that he did not "give a fuck about [her] mental state" when Stevenson shared that she was getting medical treatment for the anxiety McDonald caused her. According to Stevenson, Thomas also told her that according to his religion, women should be in cubicles and men should be in offices.[5] McDonald expressed to Stevenson that in his view, women were better suited for clerical duties and would at times make

---

[5] Thomas denies saying this. In the Prior Opinion, the Court determined this fact was in dispute.

jokes about "plantation life" and the KKK.  Thomas and McDonald both excluded Stevenson from management meetings in late 2019 and early 2020.

In 2022 and 2023, the City passed over Stevenson for at least two additional promotions, including the role of Director of DPW (and instead appointed a man to that position).  And, despite being the only person on the City's Civil Service List eligible to become the Assistant Director of Solid Waste Management, the City has chosen to leave that position vacant.

### B.    Procedural History

Stevenson commenced this action on December 10, 2020.  She asserts nine causes of action in the Complaint:  Deprivation of Civil Rights under 42 U.S.C. § 1983 (Count One); Retaliation under 42 U.S.C. § 1983 (Count Two); Deprivation of Civil Rights under the NJCRA (Count Three); Retaliation under the NJCRA (Count Four); Hostile Work Environment under NJLAD (Count Five); Sex/Gender Discrimination under NJLAD (Count Six); Retaliation under the NJLAD (Count Seven); Retaliation under CEPA (Count Eight); and IIED under New Jersey common law (Count Nine).  Compl.

In the first half of 2021, Defendants each filed an Answer to the Complaint and the case proceeded to discovery.  D.Es. 12, 18 & 20.  Discovery continued for about three years.  *See* Dkt.  On June 11, 2024, the parties jointly requested leave to file cross-motions for summary judgment as to liability on Plaintiff's claims and to defer engaging in expert discovery until after the motions were decided.  D.E. 77.  On July 3, 2024, the Hon. André M. Espinosa, U.S.M.J., noting that fact discovery had been completed, granted the parties' request and set a summary judgment briefing schedule.  D.E. 78.  Their summary judgment motions followed.

C.      **The Prior Opinion**[6]

Both Stevenson and Defendants moved for summary judgment on all counts.  As noted above, the Court denied Stevenson's Summary Judgment Motion in its entirety and granted Defendants' motions in part and denied them in part.

1.      *Dismissal of Counts Four, Seven, and Nine*

The Court first addressed Stevenson's IIED claim (Count Nine).  The Court recognized that the conduct underlying Stevenson's IIED claim was the same conduct underlying her CEPA claim.  Prior Op. at 11.  And, because, pursuant to CEPA's waiver provision, "the institution of [a CEPA claim] shall deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law" when both causes of action are based upon the same conduct, N.J. Stat. § 34:19-8, the Court concluded that Stevenson was barred from pursuing her IIED claim given she also was pursuing her CEPA claim on summary judgment.  Prior Op. at 11 (citing *Hrinuk v. Pub. Serv. Elec. & Gas Co.*, No. 14-988, 2018 WL 621292, at *2 (D.N.J. Jan. 30, 2018)).  Accordingly, the Court granted Defendants summary judgment on Count Nine and denied Stevenson summary judgment on Count Nine.

The Court then held that Stevenson's CEPA claim also amounted to a waiver of her other state law claims based upon the same conduct underlying her CEPA claim—namely, her retaliation claims under the NJCRA and NJLAD.  *Id.* at 12 (citing *Young v. Schering Corp.*, 141 N.J. 16, 20 (1995) for the proposition that CEPA's waiver provision barred other state claims requiring a finding of retaliatory conduct based on the same conduct).  The Court therefore granted Defendants

---

[6] The Court's summary of the Prior Opinion focuses primarily on the issues raised by Stevenson in her Motion.

summary judgment on Counts Four and Seven (Stevenson's retaliation claims under the NJCRA and NJLAD, respectively), and denied Stevenson summary judgment on these counts.

### 2.    *Statute of limitations issues*

After granting Defendants' summary judgment on Counts Four, Seven, and Nine, the Court limited the scope of Stevenson's remaining claims after determining that many of the facts Stevenson relied on to support her case occurred outside the applicable statutes of limitations. *Id.* at 13 (explaining that the statute of limitations for Stevenson's § 1983, NJCRA, and NJLAD claims is two years, and that the statute of limitations for her CEPA claims is one year). The Court also concluded that the eighteen-month period ending in July 2019 in which Stevenson had a reasonable working environment precluded the Court from applying the continuing violations doctrine to the earlier conduct she relied on, and therefore, any of Defendants' conduct which occurred before July 2019 was not actionable. *Id.* at 15.

Therefore, for Stevenson's § 1983, NJCRA, and NJLAD claims, the Court proceeded to consider only Stevenson's claims that arose from events and conduct that occurred during or after July 2019. And, for Stevenson's CEPA retaliation claim, the Court only considered those parts of her claim that were based on events that occurred within the one-year limitations period.

### 3.    *Stevenson's discrimination claims in Counts One, Three, and Six partially survive*

Under the first step of the *McDonnell Douglas*[7] burden-shifting framework, Stevenson was required to first establish a *prima facie* case of discrimination. To do so, she needed to show that: "(1) [she] is a member of a protected class; (2) [she] was qualified for the position [she] sought to attain or retain; (3) [she] suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." Prior Op. at 16-

---

[7] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

17 (quoting *Sorokina v. College of New Jersey*, No. 24-1365, 2025 WL 1289148, at *4 (3d Cir. May 5, 2025)).

After reviewing the record, the Court found no material fact was in dispute concerning the actions of the Mayor or Scott (regarding Stevenson's discrimination claims), and therefore, the Court granted both summary judgment on Counts One, Three, and Six. However, the Court found genuine disputes of material facts regarding the actions of McDonald and Thomas, as well as those Defendants' justifications for the challenged conduct, and accordingly, denied Stevenson and those two Defendants summary judgment on these counts.

In particular, the Court broke down Stevenson's discrimination claims in the Prior Opinion into several sub-categories of conduct, including her direct evidence of Defendants' discriminatory animus, Defendants' denial of overtime opportunities, Defendants giving raises and promotions to less qualified individuals, Defendants revoking Stevenson's access to City vehicles (but not doing so for others), Defendants excluding Stevenson from meetings, and other issues. *Id.* at 18-25. As relevant to the present Motion, the Court granted Defendants summary judgment on Stevenson's claim that any failure to promote Stevenson or to provide her raises was motivated by a discriminatory animus. *See id.* at 21-22. When reaching that decision, the Court first noted that although the parties did not dispute Stevenson's claim that less qualified Muslim men received promotions and non-contractual raises, Stevenson failed to identify what promotions she was referring to or when those promotions and raises occurred; therefore, the Court could not determine whether these promotions and raises occurred under circumstances that could give rise to intentional discrimination. *Id.* at 21 (citing *Bennet v. SE. Pennsylvania Transp. Auth.*, No. 24-1376, 2025 WL 1248815, at *3 (3d Cir. Apr. 30, 2025)).

The Court then addressed Stevenson's claim that the failure to promote her to the positions of Director of DPW and Assistant Director of Solid Waste Management were motivated by a discriminatory animus. The Court was not persuaded by Stevenson's arguments that these events occurred under circumstances that could give rise to an inference of intentional discrimination and concluded that she failed to establish a *prima facie* case of discrimination. *Id.* at 22. The Court specifically explained that while Stevenson established (1) that she was ultimately found eligible for the position of Director of DPW after appealing an initial determination that said otherwise, and (2) that she remains eligible for the position of Assistant Director of Solid Waste Management, she failed to put forth facts that a reasonable factfinder could rely on to find that Defendants' previous explanations for why she was not hired for these roles were a *post hoc* fabrication or motivated by a discriminatory animus. *Id.* (citing *Sorokina*, 2025 WL 1289148, at *4). Stevenson also failed to put forth facts that suggested that McDonald or Thomas were involved in the decisions to appoint someone else as Director of DPW or to leave the position of Assistant Director of Solid Waste Management vacant for multiple years. *Id.* Accordingly, the Court granted Defendants summary judgment on Stevenson's failure to hire claims.

4.    *Dismissal of Stevenson's retaliation claims (Counts Two and Eight)*

Like for her discrimination claim brought under § 1983 (Count Two), to prevail on summary judgment for her retaliation claim brought under § 1983, Stevenson was required to first make a *prima facie* showing: "(1) that she engaged in protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." Prior Op. at 26 (quoting *Sorokina*, 2025 WL 1289148, at *4).

Similarly, for her CEPA claim, Stevenson was required to establish that: (1) she reasonably believed that her employer's conduct violated the law; (2) she performed a "whistle-blowing" activity as defined in N.J. Stat. Ann. § 34:19-3(c); (3) she suffered an adverse employment action; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action. *Id.* at 26 (citing *Lippman v. Ethicon, Inc.*, 222 N.J. 362, 380 (2015)).

Both claims required Stevenson to establish a causal connection between the protected activity—here, Stevenson's filing of the AA Complaint—and the adverse action. The Court found she failed to do so and therefore granted Defendants summary judgment. In the Prior Opinion, the Court identified multiple flaws with Stevenson's arguments establishing causation, none greater than the fact that the overwhelming majority of the post-AA Complaint conduct she complains of—including being excluded from meetings, that sanitation violations were dismissed, and that she was denied promotions and raises—also occurred *before* she filed her AA Complaint. *Id.* at 26-27. And, without additional facts that suggested those acts were committed with a retaliatory motive, Stevenson failed to establish a causal nexus between any possible adverse action and her filing the AA Complaint. Therefore, the Court granted Defendants summary judgment on these counts and denied Stevenson summary judgment.

5.    *Stevenson's hostile work environment claims (Counts One, Three, and Five) partially survive*

Next, the Court considered Stevenson's complaints that she suffered from a hostile work environment in violation of § 1983, the NCJRA, and NJLAD. To prevail on her § 1983 and NJCRA hostile work environment claims, Stevenson was required to show that: (1) she suffered intentional discrimination because of her race, gender, or religion; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected her; (4) the discrimination would have detrimentally affected a reasonable person of the same protected class in her position; and

(5) a basis for vicarious liability.  Prior Op. at 28-29 (citations omitted).  And to establish a *prima facie* hostile work environment claim under NJLAD, Stevenson had to prove that "the complained-of conduct (1) would not have occurred but for the employee's [protected status]; and it was (2) severe or pervasive enough to make a (3) reasonable [person] believe that (4) the conditions of employment are altered, and the working environment is hostile or abusive."  *Id.* at 29 (citation modified).

The Court identified a dozen claims that Stevenson made in support of her contention that she suffered from a hostile work environment.  *See id.* at 29-30.  While the Court decided that most were either innocuous or barred by the statute of limitations, some raised a viable dispute, including:  (1) Stevenson's exclusion from meetings; (2) offensive comments made to Stevenson by Thomas and McDonald; (3) McDonald's consistent habit of ignoring and disregarding Stevenson; and (4) Stevenson's assertions that Thomas denied her overtime work, denied her access to City vehicles, and cursed at her in response to concerns she raised about her mental state.  *See id.* at 30-31.

### 6.    Liability

Finally, the Court addressed Stevenson's arguments that she was entitled to summary judgment against the City on her claim brought under *Monell v. New York City Dept. of Social Servs. of the City of New York*, 436 U.S. 658, 691 (1978).  As explained in the Prior Opinion, Stevenson failed to raise a genuine dispute of material fact with respect to her *Monell* claim.  And because the record did not support a *Monell* claim, the Court granted the City summary judgment on Stevenson's *Monell* claim.  Prior Op. at 34.  However, the Court determined that Stevenson raised genuine disputes of material fact concerning the efficacy of the City's anti-discrimination policies, and therefore, denied both the City's and Stevenson's motions for summary judgment as

to the City's vicarious liability under NJLAD for the actions committed by McDonald and/or Thomas. *Id.* at 35.

In addition, the Court noted that NJLAD allows for supervisors to be individually liable for their own actions as well as the conduct of others under their supervision. In turn, the Court reasoned that a jury could find that McDonald and Thomas were aware of their own discriminatory conduct and used their supervisory authority in furtherance of it. However, Stevenson failed to show that Thomas was aware of McDonald's discriminatory conduct. Accordingly, the Court denied McDonald and Thomas summary judgment with respect to whether either may be personally liable for their own NJLAD violations and granted Thomas summary judgment with respect to any NJLAD violations committed by McDonald. The Court also denied Stevenson summary judgment given the aforementioned disputes of material facts.

## II.    LEGAL STANDARD

Motions for reconsideration are not expressly authorized by the Federal Rules of Civil Procedure. However, this District permits such motions under Local Civil Rule 7.1(i) as "an extraordinary remedy that is [to be] granted very sparingly." *Brackett v. Ashcroft*, No. 03-3988, 2003 WL 22303078, at *2 (D.N.J. Oct. 7, 2003) (citation modified). "Motions for reconsideration exist to 'correct manifest errors of law or fact or to present newly discovered evidence.'" *Mid-Am. Salt, LLC v. Morris Cnty. Coop. Pricing Council*, 964 F.3d 218, 230 (3d Cir. 2020) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)).

A court may grant a motion for reconsideration if the moving party shows one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Johnson v. Diamond State Port Corp.*, 50 F. App'x 554,

560 (3d Cir. 2002) (quoting *Max's Seafood Cafe v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)). Local Civil Rule 7.1(i) requires a party to "set . . . forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." *See also Bowers v. Nat'l Collegiate Athletic Ass'n*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001) ("The word 'overlooked' is the operative term . . . .").

A party's mere disagreement with the Court's prior ruling does not warrant reconsideration. *Boretsky v. New Jersey*, 433 Fed. App'x 73, 78 (3d Cir. 2011). Relatedly, Rule 7.1(i) "does not contemplate a Court looking to matters which were not originally presented." *Bapu Corp. v. Choice Hotels Int'l, Inc.*, No. 07-5938, 2010 WL 3259799, at *1 (D.N.J. Aug. 17, 2010) (quoting *Florham Park Chevron, Inc. v. Chevron U.S.A., Inc.*, 680 F. Supp. 159, 162 (D.N.J. 1988)). Thus, a motion for reconsideration is not an opportunity for a party to raise new arguments they could have before.

## III.    ANALYSIS

### A.    It Was Not a Clear Error to Conclude That CEPA's Waiver Provision Applied and Required Dismissal of Counts Four and Seven

Stevenson first takes aim at the Court's determination that she waived her NJCRA and NJLAD retaliation claims by moving for summary judgment on her CEPA claim. Mot. at 1. According to Stevenson, the Court's dismissal was premature because she has until the end of discovery or until the Court holds a pretrial conference to decide whether to elect whether to pursue her CEPA claim, at which point, CEPA's waiver provision would take effect. *Id.* at 1-2. Stevenson relies on cases from this District which have stated that CEPA's waiver does not kick in until after discovery is complete to argue that because limited expert discovery in this case remains, the Court's application of CEPA's waiver at this juncture was a clear error of law. *Id.* at 2-3.

The Court disagrees with Stevenson's reading of the relevant caselaw as it applies to the facts of this case and finds her arguments unpersuasive.  Although the New Jersey Supreme Court has not yet decided exactly when a CEPA claim is instituted such that its waiver takes effect, it recognized in *dicta* that "the meaning of 'institution of action' could conceivably contemplate an election of remedies with restrictions in which the election is not considered to have been made until discovery is complete or the time of a pretrial conference."  *Young*, 141 N.J. at 32-33 (quoting CEPA).  Following the guidance set forth in *Young*, several courts in this District have held that CEPA's waiver applies at some point after the pleadings stage, and for that reason, have denied motions to dismiss which assert that CEPA's waiver applied at that earlier stage of the case.  *See, e.g.*, *Ayres v. Mafco Worldwide Corp.*, No. 18-12071, 2019 WL 581342, at *6 (D.N.J. Feb. 13, 2019) (collecting cases).

The posture of this action is different from those, as Stevenson argues that even after the completion of fact discovery and after the parties have moved for summary judgment that CEPA's waiver still does not apply if expert discovery remains.  In the absence of a controlling decision from the state's highest court on an issue of state law, a federal court must predict how the court would rule by considering the relevant decisions of the state's appellate courts.  *Broad v. Home Depot U.S.A., Inc.*, 16 F. Supp. 3d 413, 417 (D.N.J. 2014) (citing *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 670-71 (3d Cir. 2002)).  As one court in this District thoughtfully explained when presented with the same question:

> In reliance on the *Young* Court's guidance, the New Jersey Appellate Division expressly held that the CEPA waiver provision must be interpreted to deem other causes of action waived only after a plaintiff has a meaningful opportunity to gather facts and choose [her] remedy based on information.  *Maw v. Advanced Clinical Comms.*, 359 N.J. Super. 420, 440 (App. Div. 2003), *rev'd on other grounds by* 179 N.J. 439 (2004).  In *Maw*, the plaintiff, who had been fired from her job as a graphic designer for refusing to sign a contract with a non-compete clause, initiated a lawsuit against her former employer seeking relief under both CEPA and the

common law for wrongful discharge in violation of public policy. *Id.* at 426-27. Pursuant to CEPA's exclusivity provision, the trial court had dismissed the wrongful discharge claim as a duplicative claim of retaliation [at the motion to dismiss stage]. *Id.* at 440. On appeal of that decision, the *Maw* court framed the issue as one of timing: "Here, the issue is not whether plaintiff ultimately may bring both a common-law claim and a CEPA claim—plaintiff acknowledges that she must elect one or the other—but rather at what point must plaintiff make the election." *Id.*

To answer this question, the court considered the Supreme Court's discussion in *Young*, and moreover, noted that the CEPA waiver provision was typically not enforced until "later stages of the litigation," that is, later than the pleadings stage. *Id.* at 441. The Appellate Division held that "before electing remedies, a plaintiff should have an opportunity to complete discovery. Only after gaining access to all of the facts will a plaintiff be in a position to make a knowing and meaningful election." *Id.* Accordingly, the *Maw* court directed that the plaintiff's common law wrongful discharge claim be re-instated, finding it was prematurely dismissed pursuant to CEPA. *Id.* Later, when the Supreme Court reversed the decision, it did so because the wrongful discharge claim had been inadequately pled and not because the appellate division's analysis of the CEPA waiver provision was incorrect. *Maw v. Advanced Clinical Comms.*, 179 N.J. 439, 445-46 (2004). The dissenting opinion expressed that both the CEPA claim and the common law retaliatory discharge claim should proceed, implying the view that the CEPA waiver provision would not bar related retaliation claims at the pleading stage. *Id.* at 459.

*Broad*, 16 F. Supp. 3d at 417-18 (citation modified). Relying on *Young* and *Maw*, courts in this District have "predict[ed] that New Jersey's Supreme Court would hold that the CEPA waiver provision would not require a plaintiff to elect her remedy at the pleading stage of the litigation but rather defer the waiver until the plaintiff has had an opportunity to *conduct* discovery." *Rubin v. Sultan Healthcare, Inc.*, No. 08-6175, 2009 WL 1372272, at *4 (D.N.J. May 15, 2009) (emphasis added).

As the above cases demonstrate, courts have allowed plaintiffs the chance to conduct discovery before requiring them to elect whether to pursue a CEPA claim so that a plaintiff can make an informed decision as to which remedy to pursue. Therefore, when deciding whether CEPA's waiver provision has taken effect in this action, this Court should consider whether

Stevenson has had "a meaningful opportunity to gather facts and choose [her] remedy based on information" obtained in discovery. *Broad*, 16 F. Supp. 3d at 417-18 (citing *Maw*, 359 N.J. Super. at 440).

Stevenson has had ample opportunity over the approximately three years of discovery to gather facts and decide whether to pursue her CEPA claim or elect to pursue alternative state-law remedies. Not only is fact discovery complete in this case, but Stevenson herself moved for summary judgment on her CEPA count and agreed to defer any expert discovery concerning damages until after the parties moved for summary judgment. *See* D.Es. 77 & 78. Under these circumstances, the Court finds it hard to conclude that Stevenson has not elected to pursue her CEPA claim and that CEPA's waiver provision applies. Because the Supreme Court of New Jersey has not issued a controlling decision on the issue of exactly when CEPA's waiver applies, this Court "has broad discretion in determining" that question. *Ayres*, 2019 WL 581342, at *6. After reviewing the record and the relevant caselaw, the Court concludes that it was not a clear error of law for the Court to have found that CEPA's waiver provision applied given that fact discovery had concluded, Stevenson had more than a meaningful opportunity to collect facts and decide whether to pursue her CEPA claim, and did in fact move for summary judgment on her CEPA claim.

### B. It Was Not a Clear Error to Grant Defendants Summary Judgment on Counts Two and Eight Because Stevenson Failed to Establish a Causal Connection Between Any Protective Activity and Any Adverse Action

Stevenson's retaliation claims brought under both § 1983 and CEPA (Counts Two and Eight, respectively) required her to establish a causal connection between a protected activity and an adverse action. *See supra* Section I.C.4. Stevenson contends that the Court's conclusion that she failed to do so was in error because the Court reviewed the record too narrowly and then misapplied the law. Mot. at 3.

Stevenson first argues that the Court erred in determining that her AA Complaint was the only actionable[8] protected activity.  According to Stevenson, she also engaged in protected activity throughout late 2018 and 2019 by reporting that McDonald continued to improperly dismiss sanitation complaints.  Mot. at 10; Summary Judgment Motion at 24.  However, in both motions, Stevenson fails to support that contention with record citations that show that she engaged in protected activity after July 2019 (the actionable time period) other than by filing her AA Complaint.  She does not, for instance, include in either motion a citation to a specific item in the record that shows she complained to a supervisor of McDonald's dismissal of sanitation violations during this time.[9]  And, after reviewing her statement of undisputed material facts submitted along with her Summary Judgment Motion, D.E. 79-2, the Court could not find proof of the same either.  "It is not the Court's responsibility to sift through the record—let alone a voluminous record like the one here—to find evidence supporting Plaintiff's position."  *Dor v. TD Bank*, No. 21-18955, 2023 WL 9017558, at *10 (D.N.J. Dec. 29, 2023), *aff'd*, No. 24-1126, 2024 WL 3219701 (3d Cir.

---

[8] Given Stevenson's representation that she had a reasonable working environment for the eighteen-month period ending in July 2019, the Court only considered Stevenson's claims that arose from events and conduct that occurred during or after July 2019.  *See supra* Section I.C.3.

[9] To reiterate a point from the Prior Opinion, the Court cannot determine whether certain actions fall inside the applicable limitation periods given Stevenson's failure to state facts with sufficient particularity.  Prior Op. at 27 n.16.  Relevant here, Stevenson certified that in the "early summer of 2019" Thomas personally appeared in municipal court to prosecute summons issued by Stevenson's unit, but that in July 2019, "shortly after his personal court appearance," Thomas informed her that the entire sanitation unit would be transferred back to McDonald.  D.E. 79-3 at ¶¶ 33-34.  Although it appears that McDonald's sanitation dismissals was front-of-mind for Thomas around this time, Stevenson's failure to either provide a more specific timeframe—one that straddles the limitations period—or explicitly indicate that she had complained to Thomas is not sufficient.  On this record, the Court cannot find a disputed material fact on this issue.  *See* L. Civ. R. 56.1(a).

June 28, 2024).[10]  Accordingly, the Court concludes that it was not a clear error to determine that Stevenson's prior complaints of McDonald's dismissals of sanitation violations was not an actionable protected activity.

Stevenson also argues that even if her AA Complaint is her only actionable protected activity, the Court should have relied on prior protected activities and the adverse employment actions that followed as evidence that the adverse employment actions that came after she filed her AA Complaint were retaliatory.  Mot. at 10.  In other words, Stevenson contends that the Court overlooked the fact that Defendants took the same adverse employment actions against her both before and after her AA Complaint, and that the Court should have inferred that she established a causal link between filing the AA Complaint and the adverse employment actions that ensued.  *See id.* at 6-7, 10.

The Court disagrees with Stevenson.  *First*, because the Prior Opinion makes clear that the Court thoroughly considered the adverse employment actions that Stevenson complained of dating back to 2011 and their impact on her ability to establish a causal nexus between any protected activity and any supposed retaliation.  Indeed, the Court in the Prior Opinion explained that the fact Stevenson faced the same difficulties in the workplace—such as being excluded from meetings, not being promoted or given raises, or being able to take a City vehicle home—both before and after filing the AA Complaint indicated that her filing of the AA Complaint undermined her ability to establish a causal nexus between these actions.  Prior Op. at 26-27.  *Second*, because even when reviewing the record as a whole, Stevenson has failed to put forth facts that suggest

---

[10] The Court notes the particular difficulty of reviewing the voluminous record in the present matter. By way of example, Stevenson alone filed over 1600 pages of materials along with her Summary Judgment Motion that did not comply with Local Civil Rule 5.2(1)(h), which requires all PDF filings to be text searchable.

Defendants' conduct was motivated by a *retaliatory* animus (as opposed to a discriminatory animus, which she also claims motivated the same conduct). And *third*, because as the Court noted in the Prior Opinion, Steveson failed to identify any adverse employment actions that followed her filing the AA Complaint within the actionable time period. *See id.* at 27 (relying on *LeBoon v. Lancaster Jewish Cmt. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007) for the proposition that "a gap of three months between the protected activity and the adverse action, without more, cannot create an inference of causation," and in turn concluding that Stevenson's transfer back to McDonald in June 2020 nearly a *year* after her filing the AA Complaint was not retaliatory in nature, especially given Stevenson was transferred *away* from McDonald's supervision a month after filing the AA Complaint).

Relatedly, Stevenson argues that the Court erred by holding that Defendants' decision not to promote her to the role of Director of DPW in 2022 was too remote in time from her AA Complaint because the Court failed to recognize that Stevenson's filing of the Complaint in *this* action was subsequent protected conduct. Mot. at 10-11. However, as courts in this District have long-recognized, motions for reconsideration "are not an opportunity to argue what could have been, but was not, argued in the original set of moving and responsive papers." *Bowers*, 130 F. Supp. 2d at 613; *see also* City Opp'n at 3 (noting that Stevenson raises this fourth protected activity for the first time in her Motion). Given Stevenson could have made this argument in her Summary Judgment Motion, but did not, the Court will not consider it now. Accordingly, the Court finds no error of law or fact in the Prior Opinion regarding its conclusion that Stevenson failed to establish a *prima facie* case of retaliation.

**C.    It Was Not a Clear Error of Law to Grant Defendants Summary Judgment on Counts One, Three, and Six for Stevenson's Failure-to-Promote Theory of Discrimination**

Finally, Stevenson contends that the Court erred in granting Defendants summary judgment on her failure-to-promote theory under Counts One, Three, and Six (respectively, discrimination under § 1983, the NJCRA, and NJLAD).  Mot. at 12-15.  Stevenson specifically maintains that Defendants have made no showing of a legitimate and non-retaliatory reason as to why she has not been promoted to the Assistant Director of Solid Waste Management position, which remains open to date, despite her being the only person on the City's Civil Service List who is eligible for the position.  *Id.* at 13.  In her Motion, Stevenson draws a distinction between the Assistant Director position—which *is* on the City's Civil Service List—and the Director of DPW position, which is not on that list.  Stevenson claims that the Court's reasons for agreeing with Defendants did not fully account for this distinction.  In turn, she asserts that the Court erred in deciding that she failed to meet her burden of showing a *prima facie* case of discrimination; according to Stevenson, it is *Defendants* who failed to meet their burden of proof.  *Id.*

Initially, the Court notes that Stevenson raises this specific argument regarding the Assistant Director position for the first time in this Motion.  Indeed, Stevenson does not mention the Assistant Director position once in her Summary Judgment Motion by name and only once cites to a paragraph of her statement of undisputed material facts which references the position.  *See* Stevenson Summary Judgment Motion at 6 (citing D.E. 79-2 ¶ 98); *see also* City Opp'n at 4 (noting same).  As mentioned above, "arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived."  *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997); *see also Feit v. Great-West Life and Annuity Ins. Co.*, 460 F. Supp. 2d 632, 644 (D.N.J. 2006) (explaining that a litigant's attempt to raise new arguments in a reconsideration motion "falls afoul of the admonition to confine the grounds for reconsideration

to matters previously presented to, but overlooked by, the court on the original motion"). Because Stevenson did not previously present any argument regarding the Assistant Director position, the Court could not have "overlooked" it, and it is therefore not proper for the Court to consider when deciding a motion for reconsideration. The Court could deny Stevenson's argument on this ground alone.

Nevertheless, the Court did, in fact, *sua sponte* recognize in the Prior Opinion that Defendants' explanation as to why the Director of DPW position was not actionable for Stevenson—because it is a cabinet-level position that is not on the City's Civil Service List—did not fully account for any decision not to promote Stevenson to the Assistant Director position, which was on the City's Civil Service List. *See* Prior Op. at 21-22. However, the Court also determined that Stevenson failed to identify any facts suggesting that a discriminatory animus motivated the decision not to promote her to the Assistant Director position or that any Defendant was involved in the decision not to promote her to that position. *Id.* at 22.

Stevenson's focus on Defendants' failure to show a legitimate non-discriminatory reason for failing to promote her to the Assistant Director position misses the point. As Stevenson herself recognizes, Mot. at 13, under *McDonell Douglas*, the burden is on Stevenson to first make a *prima facie* showing that a decision not to promote her occurred under circumstances that could give rise to an inference of intentional discrimination. *Sorokina*, 2025 WL 1289148, at *4. And relatedly, it was also on Stevenson to demonstrate how Defendants each participated in the decision not to promote her, something she has not done. *See Kee v. Camden Cnty.*, No. 04-842, 2007 WL 1038828, at *10 (D.N.J. Mar. 30, 2007) ("Plaintiff has failed to demonstrate that a genuine issue of material fact exists regarding whether [defendants] personally participated in discriminatory actions against Plaintiff or directed others to do so. Moreover, Plaintiff has presented no evidence

21

that either [defendant] personally failed to promote Plaintiff or were involved in the decision to transfer Plaintiff out of the narcotics unit.").

The Court agrees with Defendants that Stevenson has failed to establish facts in the record that create a dispute of material fact as to whether any Defendant was involved in the decision not to hire her for the Assistant Director position.  Therefore, Stevenson has failed to meet her burden to show that her failure-to-promote theory should survive summary judgment (or be granted in her favor).  Even in her Motion currently before the Court, Stevenson still does not sufficiently connect any Defendant to the decision not to promote her.  *See* Thomas Opp'n at 9-10 ("[Stevenson] provides no evidence that Defendant Thomas was involved in any promotional decisions or that he had any authority to influence a potential pay raise for [Stevenson].  Likewise, [Stevenson] provides no evidence, circumstantial or otherwise, that Defendant Thomas attempted to influence others regarding such decisions."); City Opp'n at 4 ("The Court simply found [Stevenson's] proofs insufficient to demonstrate that the vacancy was the result of unlawful discrimination.  Even now, [Stevenson] does not specifically identify any fact in the record to support this position."); McDonald Opp'n at 6 ("Importantly, [Stevenson] does not suggest that McDonald was involved with the decision . . .  to leave the position of Assistant Director of Solid Waste Management vacant for two years.").  As the above makes clear, it was not a clear error of law to grant Defendants summary judgment on Stevenson's failure-to-promote claim on Counts One, Three, and Six given Stevenson failed to establish a *prima facie* case of discrimination under this theory of liability.

In sum, the Court finds no clear error of law or fact in its Prior Opinion, and therefore, will **DENY** Stevenson's Motion.

IV.    **CONCLUSION**

For the reasons explained above, the Court will **DENY** Stevenson's Motion.    An appropriate Order accompanies this Opinion.


Dated: **January 15, 2026**



Evelyn Padin, U.S.D.J.